MARY S. DUNNING, Trustee, etc., Respondent, v. THE OCEAN NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

61  497
135  279
61  497
142  490

Where one dies seized of real estate incumbered by a mortgage, which is thereafter foreclosed and the land sold, any surplus arising on the sale is to be regarded as realty, and goes to the heirs or devisees, not to an administrator, and an administrator, as such, cannot maintain an action to recover the same; and this is so, although the mortgage provides that the surplus shall be paid to the mortgagor, his executors or administrators.

*Varnum* v. *Meserve* (8 Allen, 160), so far as it relates to the rights of an executor or administrator to bring an action for the surplus, disapproved.

*It seems* that this rule is not changed by the provisions of the act of 1867, extending the jurisdiction of surrogates' courts (chap. 658, Laws of 1867), which requires such surplus to be paid to the surrogate, to be disposed of on the application of an executor or administrator. Said statute was simply designed to provide for the application of the surplus to the payment of debts, if required for that purpose, and does not otherwise affect the rights of heirs or devisees.

Where a will contains a devise to the executor named therein in trust, the trust duty is not annexed to the office of executor, but to the person; and an administrator with the will annexed does not succeed to any rights concerning the trust estate, unless in case it be ordered sold for the payment of the testator's debts.

D. died seized of certain real estate covered by a mortgage, and leaving a will by which she devised said real estate to her executor upon certain specified trusts.. The executor named renounced, and refused to accept the trust. Defendant, the owner of the mortgage, foreclosed the same, and upon sale bid in the lands at a price which left a surplus. This defendant retained. Plaintiff was subsequently appointed administra-

trix with the will annexed, and thereafter she was duly appointed trustee to carry out the trust imposed upon the executor as aforesaid. In an action brought by her as trustee to recover such surplus, defendant pleaded the statute of limitations. *Held,* that the cause of action did not accrue until plaintiff's appointment as trustee, as until then there was no person who could maintain the action ; and as such appointment was within the time limited by the statute, that the action was not barred.

(Argued September 28, 1874 ; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court upon trial without a jury. (Reported below, 6 Lans., 296.)

This action was brought to recover surplus moneys arising on foreclosure sale. The facts sufficiently appear in the opinion.

*F. W. Hubbard* for the appellant. The surplus arising from the foreclosure sale was personal property, and the plaintiff, as administratrix, was the proper person to sue for it. (*Bogert* v. *Furman,* 10 Paige, 496 ; *Swazey* v. *Wills,* 1 Bradf., 495 ; 1 Duer, 308 ; *Graham* v. *Dickinson,* 3 Barb. Ch., 169 ; *Banks* v. *Scott,* 5 Mad., 500 ; *Cope* v. *Wheeler,* 41 N. Y., 308 ; *Matthew* v. *Duryee,* 45 Barb., 69 ; Willard's Eq., 588 ; 2 Sandf. Ch., 46 ; Laws 1867, chap. 658.) This fund should pass into the hands of plaintiff and be administered in the manner prescribed by law. (Laws 1858, chap. 314, §§ 1, 2 ; Code, § 113.) Plaintiff, as administratrix, should be held competent to execute the will fully under the statute. (3 R. S. [5th ed.], 157, § 22.)

*Lansing & Sherman* for the respondent. The trust reposed in the executor by the will as to the real estate was not conferred on the administratrix with the will annexed. (*Conklin* v. *Egerton,* 21 Wend., 430 ; 25 id., 224 ; *Dominick* v. *Michael,* 4 Sandf., 374 ; *Gilchrist* v. *Rea,* 9 Paige, 72 ; *Roome* v. *Phillips,* 27 N. Y., 357, 363.) The trustee named in the will having renounced the trust, and no one having

been appointed trustee in his place, there was no one, when defendant received the surplus money, to whom the cause of action accrued. (*Bucklin* v. *Ford*, 5 Barr, 395; Ang. on Lim., §§ 54, 62; *Wenman* v. *Mohawk Ins. Co.*, 13 Wend., 267; *Davis* v. *Garr*, 2 Seld., 124; *Olcott* v. *T. R. R. Co.*, 20 N. Y., 225.) No cause of action accrued until plaintiff was appointed trustee. (*Bruce* v. *Tilson*, 25 N. Y., 196; *Eyre* v. *Beebee*, 28 How., 334; *Van Nest* v. *Lott*, 16 Abb., 130; *Gates* v. *Andrews*, 37 N. Y., 657; *Mathews* v. *Duryee*, 45 Barb., 69.)

Reynolds, C. On the 2d day of April, 1855, William Pearsons conveyed to Margaret Dunning a farm, in the county of Jefferson; and, to secure a part of the purchase-money, she gave a mortgage for $4,500. This mortgage, by various assignments, became the property of the defendant on the 7th day of December, 1858. Under the power of sale contained in the mortgage, and in pursuance of the statute, the defendant caused the farm to be sold on the 2d day of July, 1861, and purchased it at $5,190; and the surplus money thence arising was $1,833.78, which the defendant has ever since and now retains. Margaret Dunning, the owner of the farm, subject, of course, to the mortgage, died on the 19th day of October, 1857, leaving a last will and testament, which was duly admitted to probate on the 3d day of January, 1859.

By this will the farm, covered by the mortgage before referred to (and in respect to the surplus arising upon the foreclosure sale of which the question now in controversy arises) was devised to her "executors hereinafter named," with the rents and profits, in trust, for the use of her then husband and two sons, as follows: To the husband the income and profits of the farm "from time to time, in the discretion of my said executor, for the necessary support and maintenance of my said husband during his natural life." It was further, in substance, declared that if the income of the farm should be insufficient to support the husband, then the executor might

mortgage or sell the whole or any part, as he "shall deem most for the interest of my said husband and children," and invest the money for the benefit of the husband. In case the farm was not sold during the life of the husband, the executor was then ordered, as soon after the death of the husband as "may be," to sell the farm for the best price to be obtained, and pay one-half of the money to two daughters, and the other half to be invested for seven years, for the benefit of two sons, in a special manner directed. Without stating the contents of the will in more detail or considering the validity of any of the trusts attempted to be created, enough has been said to enable us to consider the only question involved in the case, and that is, whether the plaintiff's claim was barred by the statute of limitations. This appears to have been the only question considered by the Supreme Court.

A few further facts are now necessary to be stated: Jennings, the executor named in the will of Margaret Dunning, renounced all his "right and claims to act as executor of the said will," and the renunciation was duly filed on the 29th of January, 1859. On the 11th of March, 1859, letters of administration, with the will annexed, were duly granted to Mary S. Dunning, the present plaintiff. On the 28th day of December, 1869, Mary S. Dunning was duly appointed by the Supreme Court a trustee to carry out the trusts imposed upon the executor named in the will of Margaret Dunning, and this she accepted; and this action was brought under her supposed authority as trustee under that appointment; and, if the cause of action against the defendant did not, in the sense of the law, accrue until that appointment, it is very clear that the plaintiff was entitled to recover.

It is urged that when the plaintiff was granted letters of administration with the will of Margaret Dunning annexed, on the 11th of March, 1859, the cause of action in the present case accrued, and that she might, in that capacity, assert in the courts her right to recover all the assets belonging to the estate of the testatrix, Margaret Dunning. This might, indeed, be in every thing regarded as general assets of the

estate of the decedent ; but in this case a very different question is presented. The farm in question was devoted, in trust, to a special purpose, which does not appear to have had any necessary connection with the disposition of the residue of her estate. We cannot, therefore, dispose of this case without considering the questions whether the plaintiff, as administratrix with the will annexed, succeeded to all the powers in trust intended to be confided to the original executor named in the will. If such be the law it is very obvious that the action was barred; and the same result will follow if the plaintiff, when appointed administratrix *cum testamento annexo*, or when the surplus was produced on the foreclosure sale, she had in that capacity an immediate right of action to recover it.

At the common law, an executor or administrator had nothing to do with any thing, save the mere personal assets of the testator or intestate ; and it is now the law that an administrator has no further authority, save where, by statute, he may apply to a court of competent jurisdiction, upon a proper state of facts, for the sale of the real estate of his intestate, for the payment of his debts. It is said, in the old books, and the rule is still, to a large extent, preserved, that an executor merely takes by force of the probate of the will, and that this legal office of executor does not necessarily embrace naked powers respecting real estate, specially conferred, or powers coupled with an interest or trust of any kind, and it is not too much to say that the appointment of a trustee, named in a will, of all the personal estate of a testator, would not have made him an executor at the common law. (*The King* v. *Jenkins*, 1 Dowl. & Ryl., 41.) The distinction between the mere executorial powers, derived from the probate of a will, and powers given to a person named as executor, in respect to real estate, either naked or in trust, with an interest, has not, I think, always been very carefully considered, so far as the adjudged cases enable me to discover. In the case at bar, it is, I think, very obvious that the testatrix intended to make her executor a trustee, with large

discretionary power, which he might exercise without any reference to his duty as an executor. This trust duty was not annexed to the office of executor, but was devised to him as a *person*. He might, therefore, accept and execute the trust without proving the will or taking out letters testamentary. He became trustee, and was vested with the trust estate by virtue of the will alone. (*Judson* v. *Gibbons*, 5 Wend., 225; *Conklin* v. *Egerton*, 21 id., 430; S. C., 25 id., 224; *Roome* v. *Phillips*, 27 N. Y., 357, 363.) This being so, it of course follows that the plaintiff, as administratrix, with the will annexed, did not succeed to any right concerning the trust estate, which she, by virtue of that office, could enforce, unless, upon her application to some court of competent jurisdiction, the real estate embraced in the trust might be ordered sold for the payment of the debts of the testatrix. The farm in question having been devised by the will to Jennings, the executor named, it might be assumed, if nothing to the contrary was shown, that he had accepted the trust. In such case his right of action to recover the trust estate or its proceeds, or the surplus money in dispute, would accrue at once, and, if not asserted within the proper period of limitation, would be forever barred. The evidence or findings in the present case are quite sufficient to establish the fact that Jennings never did, and never intended to, accept the trust. While his renunciation of the office of executor would not necessarily divest him of his right to execute the trust, it is some evidence that he intended to have nothing to do with the estate, and it abundantly appears, as a matter of fact, that he and all concerned understood that he refused to accept the trust.

It was the practice in such cases, in earlier times, to require the renouncing trustee to execute a release to his associate trustees, or to execute a deed of disclaimer. (1 Cruise, 539.) In this case the trustee had no associates, and could make no release; and a formal deed of disclaimer appears not to be regarded as necessary in the present condition of the law. (*Burritt* v. *Silliman*, 13 N. Y., 93; *Townson* v. *Tickell*, 3 B. & Ald., 31.) If the foregoing views are correct, it follows

that, until the appointment of the plaintiff by the Supreme
Court, on the 28th of December, 1869, as trustee in the place
of Jennings, there was no party legally existing in whom a
right of action vested to recover the money in controversy.
(*Bucklin* v. *Ford*, 5 Barb., 395; Angell on Limitations,
§§ 54, 62; *Davis* v. *Garr*, 2 Seld., 124.)

We are referred by the learned counsel for the appellant
to chapter 658 of the Laws of 1867 as having some appli-
cation to the present case, but it has none. The rights of
all parties to the surplus in dispute had been irrevocably
fixed before the act was passed, and they could not be affected
by any subsequent legislation. Besides, the act, in its very
terms, cannot be applied to this case, in any possible aspect,
so far as I can discover. But as the defendant never paid
the surplus claimed into any Surrogate's Court, in any sup-
posed compliance with the statute referred to, or to any other
court or person, we find no occasion to consider the question
further.

The judgment below should be affirmed, with costs.


DWIGHT, C. I concur with Judge REYNOLDS in the dispo-
sition of this cause. I desire to add a few words upon a
question much discussed on the argument, which is, whether
the money in litigation could have been collected by the
administrator on the theory that it was personal property.
This depends upon the correct application of the doctrine of
" equitable conversion." In order to become personal estate
for the purposes of administration, the money must have
belonged to the decedent as personalty. Whatever once
descended to her heirs or devisees cannot be divested from
them, except for the purpose of liquidating some superior
claim. After that has been satisfied, any surplus belongs to
the heir or devisee, on the theory that it stands in the place
of, and represents, the original fund. The conversion of the
land into money was only made for a special purpose; and
that having been accomplished, the surplus, by a fiction of
equity, is reconverted into land.

The truth of this view can be easily shown by supposing that the mortgaged property had consisted of separate lots, and no more had been sold on the foreclosure than was necessary to satisfy the mortgage. The unsold residue would then, of course, belong to Mrs. Dunning's heirs or devisees. Could it possibly have made any difference, if the lots had happened to be sold and a surplus realized? If so, this would be to make the rights of heirs and devisees depend upon accident rather than upon principle. As this property once belonged to the devisee in trust, and for the space of time between the date of the testatrix's death and that of the foreclosure, the surplus which represents in equity that estate, still belongs to the devisee. An action to recover it could be brought by no other person. The devisee, owing to the renunciation of Jennings not being in existence until an appointment was made December 28th, 1869, the statute of limitations did not begin to run until that time, and, of course, is no bar to this action.

These views are clearly sustained by the authorities. *Wright* v. *Rose* (2 Sim & Stuart, 323) is distinctly in point. In that case the mortgage contained a power of sale with a direction that the surplus money should be paid to the mortgagor, his executor or administrators. The interest on the mortgage having remained unpaid, the mortgagee sold the estate after the mortgagor's death, under the power of sale, for a sum which considerably exceeded the mortgage money and interest. The action was brought by the plaintiffs as administrators of the mortgagor, for an accounting as to this surplus. The bill was demurred to by the defendant, on the ground of want of equity. The court said, that if the estate had been sold by the mortgagee in the lifetime of the mortgagor, then the surplus moneys would have been personal estate of the mortgagor, and the plaintiff would have been entitled. But the estate being unsold at the death of the mortgagor, the equity of redemption descended to the heir, and he is now entitled to the surplus produce. See, also, to the same effect, *Polley* v. *Seymour* (2 Yo. & Coll., 721);

*Brown* v. *Bigg* (7 Ves., 279); *Bourne* v. *Bourne* (2 Hare, 39); *Matson* v. *Swift* (8 Beavan, 374); *Van* v. *Barnett* (19 Ves., 102); *Biggs* v. *Andrews* (5 Sim., 424); Dalzell on the Law of Equitable Conversion (89); *Varnum* v. *Meserve* (8 Allen, 160).

The Massachusetts cases hold that the executor or administrator may bring the action for the surplus when the mortgage provides that it shall be paid to the mortgagor, his "executors or administrators." They recognize the doctrine that a surplus, under such circumstances, is usually real estate, but declare that the equity of redemption in mortgaged lands is but a trust estate, and that the legal title to the money is in the executor or administrator by force of the contract with the mortgagee, and that when he collects it he holds it in trust for the heirs or devisees, as the case may be. (*Varnum* v. *Meserve, supra.*) These views cannot prevail here. The equity of redemption is a legal estate in New York. The case of *Varnum* v. *Meserve* is in direct opposition to *Wright* v. *Rose* (*supra*), where the promise was also made to pay the mortgagor, his "executors or administrators." The true construction of those words undoubtedly is, that the promise is to pay the executors or administrators whenever it might have been collected by the mortgagor, as, *e. g.*, where the land was sold in his lifetime.

The statute of 1867, chapter 658, cited on the argument, is not in the way. This act lends no countenance to the theory that the present surplus is to be regarded as personal property. On the other hand, it is carefully framed on the supposition that it is real estate. The first section provides that the surplus shall be paid over to the surrogate of a court having jurisdiction to entertain an application for the sale, or mortgage, or lease of the real estate of a deceased person for the payment of debts. The second section requires that the surrogate shall, upon the application of an executor, administrator or *creditor*, made in the same manner as upon proceedings for the sale, etc., of land, make an order disposing of the surplus moneys as proceeds of real estate.

This section has, as would appear, only a limited scope, and is simply designed to provide a method for applying the surplus to *the payment of debts.* It makes no change in the law as to the proper person (considered as owner) to bring an action for the surplus. The terms of the statute show that the surplus is regarded as real estate. The most careful precautions are taken to prevent the heirs from being deprived of it, except in the same manner and to the same extent that would be permitted in case the land had remained unsold.

The judgment should be affirmed.

All concur.

Judgment affirmed.