Freedman, J.
This is an action of partition. An interlocutory judgment of partition and sale was entered in this action in May, 1885. As to the premises now in question, the sale took place in December, 1886, under a supplemental decree of this court.
At said sale Mr. Thomas Lyons purchased two lots on the east side of Sixth avenue, forty-nine feet eleven inches north of 139th street, being fifty feet upon the avenue and about 7 5 feet in depth.
At the same sale Mr. Benjamin Fairchild became the bidder for six lots, and paid ten per cent, of the purchase money, and then assigned his bids to J. Romaine Brown, whereupon it was stipulated that Brown should be bound by the printed terms of sale.
Subsequently Mr. Lyons, through his attorney, served upon the referee a notice declining to accept the title and stating several objections to the validity of the title which may be summarized as follows :
(1.) That the deed from William H. Raynor and wife to Lewis J. Phillips, dated November 30, 1872, and re *477 corded Jan. 13, 1875, in liber 1317 of conveyances, at page 102, is void for uncertainty by reason of its omission to specify the amount of interest conveyed.
(2.) That the descendants of William H. Raynor, that is to say his grandchildren, were not made parties to the foreclosure suit brought by Abraham Scholle as plaintiff against Benjamin A. Willis and others as defendants.
(3.) That the executors of William H. Raynor’s will, viz.: William R. Stewart, John H. Morris and Jonathan Edgar were not made parties to such foreclosure suit.
(4.) That the deed executed by Sarah E. Cornish (formerly Sarah E. Raynor) individually and as sole acting executrix of and trustee under the will of William H. Raynor deceased, as party of the first part, to Abraham Scholle, William Scholle and Jacob Scholle, parties of the second part, dated November 21, 1878, and recorded in liber 1477 of conv., p. 171, was void or voidable for want of a consideration and the further reason that there were creditors of William H. Raynor who might show themselves entitled to have it set aside.
(5.) That no record title appears to have existed in Garrett Myer, the predecessor in title of Charles Henry Hall.
(6.) That the premises in question, or a portion of them, were originally below the high water line of the Harlem River.
Mr. Brown, through his attorney, also served a notice declining to accept title and stating objections to the validity of the title which were substantially the same as those urged by Mr. Lyons except that he made no claim that the title to the lots purchased by him was affected by the original line of high water.
Mr. Lyons now moves to be relieved from his bids, which motion is opposed by the< plaintiff, and at the same time the plaintiff moves that Mr. Brown be compelled to take title.
. These motions present questions of the highest importance because they affect the titles of a large number of *478 lots in addition to the titles of the lots directly involved. In view of such importance, I have given to the questions presented, the most careful consideration.
The lots in question are claimed by the plaintiff to have been part of a large tract of land north of 125th street in the city of New York owned and possessed by Charles Henry Hall from about the year 1825 to the time of his death in the year 1852. From the year last mentioned until the year 1872, nothing seems to have been done with the property. In 1872, Benjamin A. Willis formed a syndicate to buy it, and did acquire title to it from the parties having an interest in it. In substance the arrangement was that Abraham Scholle should advance $58,500; that Willis should purchase the property and thereupon should transfer to William H. Ray-nor an equal undivided seven tenths of the property, and that out of these William H. Raynor should convey to Abraham Scholle two tenths, and to Lewis J. Phillips two tenths. To secure the amount to be advanced by Abraham Scholle it was further agreed that Willis should execute and deliver to Phillips and Raynor a bond and mortgage securing the payment of $58,500, and that said bond and mortgage should be assigned by Phillips and Raynor to Scholle. The arrangement was carried out and in pursuance of it the conveyances and the mortgage and the assignment thereof were made, except that William H. Raynor, instead of conveying to Lewis J. Phillips two tenths in terms, executed and delivered to the latter the deed to which the first objection above specified is made. This deed purported to convey all the undivided tenth parts which had been conveyed to Raynor by Willis and described them as seven undivided tenth parts. In point of fact Raynor, after having conveyed two tenths to Abraham Scholle, had only five tenths left which he could convey.
In 1873 Lewis J. Phillips mortgaged his interest in two tenths to John D. Phillips. That mortgage was foreclosed and the title to the interest covered by it trans *479 ferred to Benjamin A. Willis by referee’s deed dated November 28,1876, and recorded in liber 1400, at page 122. Thus, if the deed by Raynor to Phillips was sufficient to convey at least two tenths, Willis became seized of an equal undivided one half of the property.
Abraham Scholle foreclosed the mortgage transferred to him by Phillips and Raynor, and the title to the property bound by that action became vested in Jacob Scholle by referee’s deed dated April 1, 1880, and recorded in liber 1542, at page 256.
The objection to the deed by William H. Raynor to Lewis J. Phillips cannot, in this case be overcome by a mere reference to the .statute which provides that a conveyance of real estate shall pass all the estate or interest of the grantor, unless it shall appear otherwise by express terms or by necessary implication from the terms of the grant, because the agreement called for a conveyance of two tenths only and because Phillips has made affidavit that the deed was not intended to convey to him the entire or five tenths of the interest of Raynor. It is therefore clear that the deed is at least liable to be reformed in equity at the suit of Raynor’s representatives or heirs at law. This being so, it remains to be seen whether all the interest of Raynor’s representatives and heirs at law has been cut off by the judgment of foreclosure obtained by Abraham Scholle. If it was not cut off by that judgment, some substantial interest remains outstanding which affects the title under consideration. This at once requires an examination of the merits of the second objection above specified.
William H. Raynor died in 1874 leaving a will by which he appointed Sarah E., his wife, as executrix, and three other persons as executors. Of these Sarah E. , alone qualified as executrix. Under this will the grandchildren of William H. Raynor had an interest in the remainder after the happening of certain events.
The plaintiff, on the final hearing of the present *480 motion, conceded that under the decision of Argall v. Raynor, 20 Hun 267, the proceedings in the foreclosure action instituted by Abraham Scholle were defective for the reason that the grandchildren of Eaynor who then were infants, had not been made parties, but he insisted that the defect is immaterial by reason of the execution and delivery by Sarah E. Cornish (formerly Sarah E. Eaynor) of the deed specified in the fourth objection, which is claimed to be a good and sufficient deed, and by reason of the legal effect of certain proceedings before the surrogate.
Upon this branch of the case the following facts appear among others, viz.: On or about October 9, 1876, Sarah E. Eaynor, as executrix of and trustee under the will of William H. Eaynor, deceased, presented to the surrogate’s court a petition for an accounting, and from the schedules filed by her in connection therewith it appeared that Abraham Scholle had presented a claim on his part against Eaynor’s estate for $28,948.18 with interest from November 1, 1875. This claim was classified by the executrix among the uncertain and disputed claims. In point of fact it was based, although the schedule did not show it, upon the written guarantee of Eaynor that fifty per cent, of the principal and interest of the bond and mortgage for $58,500 should be paid and that he would also pay one half of the taxes and assessments. On or about February 8, 1877, Abraham Scholle commenced his action to foreclose the $58,500 mortgage. In the meantime Sarah E. Eaynor had married again, and her name then was Sarah E. Cornish; As such she interposed an answer to the complaint. Thereupon an agreement was made between Scholle and Mrs. Cornish that the former should withdraw his claim against the estate of Eaynor and allow the estate to be settled up, and that in consideration therefor Mrs. Cornish should withdraw her answer and relinquish all interest she had in the mortgaged premises individually and as executrix *481 of and trustee under the will of Raynor. The agreement was carried out and in pursuance thereof Mrs. Cornish executed and delivered to Abraham Scholle, William Scholle and Jacob Scholle the deed dated November 21, 1878. By that deed she conveyed the mortgaged premises and all the estate, right, title, interest, claim and demand whatsoever, both in law and equity, which William H. Raynor had in them in his lifetime and at the time of his decease, and which she had in them by virtue of his will and testament or otherwise.
Thereafter, on or about December 28, 1881, Mrs. Cornish presented to the surrogate a petition for a final accounting, and the accounts and schedules filed in connection therewith showed that'the claim of Scholle had been settled. The precise nature of the settlement was not fully disclosed and no copy of the deed was submitted. The schedules simply showed that the settlement had been made by a conveyance of Raynor’s interest of three tenths in the mortgaged premises.
Under these circumstances, and inasmuch as no previous order had been granted by the surrogate authorizing a sale of Raynor’s real estate on the ground of the insufficiency of the personal estate to pay the debts of the testator, it is quite a serious question whether the infant grandchildren of Raynor, though represented by special guardian, were absolutely concluded as to the settlement by means of thé decree of the surrogate entered upon the accounting and directing the distribution of the surplus.
In Russell v. Russell, 36 N. Y. 581, the decision was to the effect that a power to an executor to sell real estate as he shall deem expedient and for the best interests of certain legatees named, is not well executed by the conveyance to one of the legatees of a portion of the real estate of the testator in payment of a debt due from the testator to the legatee; that the debt is to be discharged by means of the personal estate, and that the real estate can be applied only for that purpose upon an *482 order of the surrogate after the personal estate is exhausted ; that a sale authorized by the will as stated must be one in which judgment and discretion are exercised, and which the executor as trustee believes to be for the interest of the legatees; and that a conveyance in discharge of a debt does not comply with these requisites. It may be argued that that decision does not strictly apply to the case at bar, because in the latter the executrix held not only the power of sale but also the legal title in trust for the purposes of the will. This at once raises the whole question of title under Raynor’s will.
The fifth clause of the will which affects the lots in question, is as follows, viz.: “ Fifthly. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, unto my executrix and executors hereinafter named, and the survivors and survivor of them in trust, with power to receive the rents and profits of the same and to sell, dispose of and convey the same at such time or times and in such manner as to them shall seem proper and best for the interest of my estate, and to invest and keep invested such rents and profits and the proceeds of such sale or sales in bonds of the United States of America, or of the city or state of New York, or in first bonds and mortgages upon good and sufficient real estate, and to divide and apply the same and the income thereof as hereinafter directed.” And the last clause of the will is as follows, viz.: “ Lastly, I hereby nominate, constitute and appoint my said wife Sarah E., executrix, and my friends William R. Stewart, John H. Morris and Jonathan Edgar executors of this my last will and testament, and guardians of the property of my children who may be under the age of twenty-bne years. And I hereby nominate, constitute and appoint my said wife, Sarah E., the guardian of the persons of my said children who may be under the age of twenty-one years. It is my request and wish that my wife shall qualify as executrix, and that at least one of my said friends *483 shall qualify and act with her as executor, and in case of her decease that at least two of my said friends shall qualify and act as executors.”
It is claimed by the purchasers now before the court, that by these provisions of the will, the title to Raynor’s real estate became vested in the persons named as executrix and executors, as trustees, and that such result was accomplished irrespective of the question whether or not they qualified as executrix and executors and notwithstanding the statute contained in 2 R. S. 109, § 55, to the effect that in case any executor shall neglect or refuse to take upon him the execution of the will, all sales made by the executor or executors who shall take upon them the execution of the will, shall be equally valid, as if the other executor had joined therein. And it is further claimed that, in as much as at the time of the execution of the deed by-Mrs. Cornish to Scholle, Jonar than Edgar and John H. Morris were living and had not renounced their executorship and trusteeship, the deed bound neither them nor Raynor’s grandchildren.
A similar claim arising upon the above two clauses of the identical will and raised by other purchasers, was considered by the general term of the supreme court in Argall v. Raynor, 20 Hun 267, and disposed of as follows, viz.: “ Second. A serious question arises under the devises of the will as to the persons in whom the legal title to the land is vested. The fifth clause of the will devises all the real estate of the testator, ‘ unto my executrix and executors hereinafter named, and the survivors and survivor of them, in trust, with power,’ etc. The testator named his wife, Sarah E. Raynor, executrix, and his friends, William R. Stewart, John H. Morris and Jonathan Edgar, executors. Sarah E. Raynor qualified and took out letters as such executrix. Neither of the other persons named has ever qualified as executor. William R. Stewart had died before the action in foreclosure was commenced; John H. Morris and Jonathan Edgar were both then living and neither of them had made any for *484 mal renunciation either as executor or trustee. Mrs. Raynor (now Mrs. Cornish) was made a party to the suit as executrix and trustee under the last will and testament of William II. Raynor. Neither Morris nor Edgar were made such parties. None of the children or grandchildren of the testator who are the cestuis que trust named in the will, were made parties. The appellant claims that by force of the will alone the several persons named as executors became trustees and were vested with the trust estate. He cites as authorities for this proposition Dunning v. The Ocean National Bank, 61 N. Y. 497; S. C., 6 Lans 298; Dominick v. Michael, 4 Sandf. 375; and Burritt v. Silliman, 13 N. Y. 96. H the title vested in all the persons named as executors in the will, then all of such persons should have been made parties to the foreclosure, because it may well be asserted hereafter by the cestuis que trust that the making of one of their trustees a party cannot cut off their interest in the trust estate; and they may be yet heard to assert that a joint estate is vested in the trustees by virtue of which they are jointly entitled to redeem the property sold for the benefit of the cestuis que trust notwithstanding the fact Mrs. Cornish was made a party to the action. How these questions should be determined we are not. under the authority of Jordan v. Poillon, above cited, at liberty to decide, because the parties most interested in them are not before us in this action.”
In view of that decision and the doctrine of Jordan v. Poillon, 77 N. Y. 518,1 fail to see how I can reach any other conclusion.
Upon the whole case it therefore sufficiently appears that the title sought to be forced upon the purchasers, so far as it rests upon the sufficiency of the judgment of foreclosure obtained by Abraham Scholle, is not free from reasonable doubt, because neither Jonathan Edgar and John H. Morris as surviving executors and trustees of William H. Raynor deceased, nor the grandchildren of the said testator, were made parties to the action of fore *485 closure, and because the said Edgar and Morris did not as trustees join in the execution of the deed made by Mrs. Cornish to Scholle. The objecting purchasers had a right to expect that they would acquire a good title, which means a title free from reasonable doubt, and the law presumes that they bid with that object in view. As the plaintiff cannot give such a title, they must be relieved.
The objections already considered are, so far as they have been sustained, so decisive of the motions, that it is unnecessary to express an opinion concerning the others.
The motion of Mr. Lyons to be relieved from his bids must be granted with costs, and the motion of the plaintiff that Mr. Brown be compelled to take title, denied with costs. The orders to be entered should be settled on notice.