Matter of the Judicial Settlement of the Account of Proceedings of ALICE LOUISA RIPLEY, as Executrix, and EMERSON FOOTE, JR., as Executor, of the Last Will and Testament of HARRY DILLON RIPLEY, Deceased.

(Surrogate's Court, New York County, November, 1917.)

Trustees — rights of testamentary — who competent to serve — wills — aliens — statutes — Laws of 1914, chap. 443.

   The rights and status of a testamentary trustee flow exclusively from the will and not from the letters of trusteeship issued upon the probate of the will.

30

Surrogate's Court, New York County, November, 1917. [Vol. 101.

Prior to the enactment of chapter 443 of the Laws of 1914, which provides that no person is competent to serve as a testamentary trustee who is an alien not an inhabitant of the state, an alien was competent to take a trusteeship of personalty.

Said statute is not retroactive and does not apply to the qualifications of persons named as trustees in a will probated prior to the enactment of said statute.

PROCEEDING upon the judicial settlement of the account of executors.

Malcolm R. Lawrence, for Alice Lousia Ripley.

Edward D. Bettens, for executor and executrix and for the three trustees under the will of Harry Dillon Ripley.

Daniel J. Mooney, special guardian for Harry Dwight Dillon Ripley.

FOWLER, S. This is an accounting proceeding, Alice Louisa Ripley and Emerson Foote, Jr., having filed their account as executors of the estate of the decedent. There is no objection to the account, but on the settlement of a proposed decree the special guardian for an infant remainderman and the attorney for the life beneficiary of a trust fund object to that part of the proposed decree which provides for the payment of the principal of the trust fund to Alice Louisa Ripley, Emerson Foote, Jr., and Benjamin Worthy Horne as trustees. The objection is specifically directed to the inclusion of the name of Benjamin Worthy Horne as one of the trustees. The objectants allege that Mr. Horne is a nonresident alien and contend that he is not competent to act as trustee of the trust fund created

by the will of a resident of this state. This is practically the one point now here for my consideration.

The testator died on February 8, 1913, and nominated and appointed Alice Louisa Ripley, Emerson Foote, Jr., and Benjamin Worthy Horne executors and trustees of his will. Benjamin Worthy Horne resides in London, England, and is not a citizen of the United States. My recollection is that when this estate was before me at some earlier stage it appeared that the late Mr. Harry Dillon Ripley resided in London and had property in England when he died. Mr. Horne did not attempt to qualify as executor in this jurisdiction, but he has now filed his consent to act as one of the trustees of the trust fund created for the benefit of Alice Louisa Ripley. Mrs. Alice Louisa Ripley at one time desired that Mr. Horne be recognized as a trustee under the will of her husband, but she seems lately to have changed her mind, if I am not misinformed. The question of law raised by the objection to the inclusion of his name in the proposed decree for distribution is whether this court should decree that the executors pay the principal of a trust fund in their possession to trustees jointly when it appears that one of them named as trustee in the will of the testator is a nonresident alien.

It happens that the point of law involved in this matter is of importance not only to the particular actors in this proceeding, but to many other Americans now residing in England. Being informed of this, I do not wish the point of law to pass at this time *sub silentio*, nor do I wish to embarrass those not before me by hasty or ill-considered action in this matter upon a point of law of general importance. Incidentally I have learned that other counsel of great eminence in their profession have given opinions on this point now

here.  I have not, however, had the advantage of see-
ing them, nor do I know their purport.

In coming to a conclusion much depends, I think, on
the nature of the alleged disability of the foreign testa-
mentary trustee and the time when such disability
accrued.  If the disability springs wholly from a late
statute, taking effect subsequently to the will itself,
the statute may not be retroactive in operation.  If
the trust was created by the will only, and not by virtue
of some action in this court, then the disqualification,
if the statute is retroactive in operation, may have to
be availed of in an independent proceeding.  I shall
consider each of these points in turn.

My present impression is that under the will of the
late Mr. Ripley, Mr. Horne was vested with a trustee-
ship quite independently of any authentication of the
will itself in this court.  In other words, Mr. Horne's
rights and *status* as trustee flow exclusively from the
will and not from the adminicular proceedings on the
will taken in this court.  *Smith* v. *Miles,* 1 T. R. 475,
480; 1 Wms. Exrs. 214; *Dunning* v. *Ocean Nat. Bank,*
61 N. Y. 497, 501.  Neither probate nor letters of trus-
teeship are the foundation of Mr. Horne's trusteeship;
on the contrary, the will itself is the sole foundation.
*Harnett* v. *Wandell,* 60 N. Y. 346, 349, 350; *Van
Schaack* v. *Saunders,* 32 Hun, 515, 520; *Matter of
Greeley,* 15 Abb. Pr. (N. S.) 393, 395; *Dunning* v.
*Ocean Nat. Bank,* 61 N. Y. 497.  Probate does not
constitute a testamentary trustee; it is the will alone.
*Dunning* v. *Ocean Nat. Bank,* 61 N. Y. 497, 502.

There is a fundamental distinction between the office
of an executor and that of a testamentary trustee.
Redf. Sur. 269, 360, 408, 409.  My references to this
learned author are to the fifth edition of his work, as
that was from his own careful and discriminating hand.
Formerly the Surrogate's Court had no authority to

issue letters of trusteeship separately from letters testamentary. It cannot, I think, be pretended, even now, that an English trustee of testator's English estates, if any there now are, would be required to take out letters of trusteeship in this jurisdiction, even though this be the *forum domicilii* or place of original probate of the will. The distinction between an executorship and a trusteeship is made plain when we consider that the same person may continue in one office and be removed from the other. *Matter of Hood,* 98 N. Y. 363; *S. C.,* 104 id. 103, 107.

Nor does it matter that Mr. Horne did not after probate qualify as an executor. It is well understood that a declination of an executorship is not a declination of a trusteeship conferred by the will. Redf. Sur. (5th ed.) 270, citing Wms. Exrs. Nor does an acceptance of an executorship necessarily imply an acceptance of the trusteeship conferred by the will. The refusal of an executor to accept the trusteeship may always be proved by parol. *De Peyster* v. *Clendining,* 8 Paige, 310. The trusteeship given by the will of Mr. Ripley to Mr. Horne was not inseparably annexed to his office of executor. *Dunning* v. *Ocean Nat. Bank,* 61 N. Y. 497.

There is doubtless some modern authority for the position that a testamentary trusteeship depends on the prior authorization of a court having jurisdiction of the probate of the will. Learned counsel cite to me Perry on Trusts (§ 262) in support of this proposition. This modern work is unavoidably tempered by current notions prevalent in many states. We are too apt to overlook what is well understood elsewhere, that juridical thinking is much affected by contemporary current tendencies. Let us look back for a moment at the growth of the conception that a testamentary trusteeship is dependent on the ratification by the court

having jurisdiction to probate the will and ascertain if possible what the conception really is worth and what it stands for in reality.  The growth of the juridical conception that a testamentary trusteeship, or an executorship even, is due to the court authenticating the will is wholly modern and is a part of the philosophical apparatus of the modern bureaucratic state. It is now generally recognized that all modern states tend to this form and the courts tend to follow.  For this reason jurists on the continent of Europe pay much attention to the current philosophies and metaphysics which they say subconsciously shape all modern juridical thinking.  No doubt they are more potent than we assume in this country.  I should, however, be very sorry to believe that the socialistic conception of the bureaucratic or administrative state had gained much ground even subconsciously in our courts of justice.  Unfortunately there is some evidence that it has to some extent.  One is the late juridical theory that property emanates from the state; another that a will is *venia testandi* or the product of the state; a third is the assumption that courts of justice have the inherent power to transfer legal title to property *in custodia legis* without the intervention of the holder of the legal title; a fourth is that offices conferred by wills are really due to the approval of administrative courts authenticating the will.  I could enumerate other instances, but these will suffice for illustration.  It is manifest that every one of these modern juridical concepts just denoted is in direct conflict with the fundamental traditions and with the common law of English-speaking peoples — so much so that they tend to alter the whole theory of the relations which the modern courts of justice bear to common-law communities.  I do not hesitate to offer these observations, although not of the conventional judicial type, because they are

not irrelevant to the present contention, which is founded wholly on modern conceptions closely associated with the bureaucratic tendencies of the modern administrative state. They have no foundation in our common law.

That every judge, in every system, has, consciously or unconsciously, as the foreign jurists assert, a current metaphysic and social philosophy which tempers and controls his juridical thinking is probably true. Otherwise the judge's application of decided cases by analogy to modern instances would be a mere traditional system of abstract logical inferences, devoid of morale and devoid of solid causative reasons *ex aequo et bono*. If we leave out of the account the modern tendencies denoted and follow the prior adjudications cited, as we are bound to do, allowing the common law only to furnish our juridical philosophy as we ought to do, then it would seem clear that Mr. Horne's title to the trusteeship in this estate does not depend on its authentication by this court, but rests solely on the will of Mr. Ripley. With this conclusion as a premise, we may proceed to consider the nature of the alleged disability of Mr. Horne to receive jointly the trust fund.

At the time Mr. Ripley's will took effect Mr. Horne was not disqualified from acting as trustee under Mr. Ripley's will. An alien was at common law competent to take a trusteeship of personalty. *Duke of Cumberland* v. *Graves,* 7 N. Y. 305. Chapter 443, Laws of 1914, first provided that no person is competent to serve as a testamentary trustee who is an alien not an inhabitant of the state. Code Civ. Pro. § 2564, as amd. The act of 1914 was not, I think, retroactive in operation. The rule is firmly settled in this state that a law is never to have a retroactive effect if its language can be satisfied by giving it prospective operation only. *New York & Oswego Midland R. R. Co.*

**472** MATTER OF RIPLEY.

v. *Van Horn*, 57 N. Y. 473, 477, 478; *Jacobus* v. *Colgate*, 217 id. 235; *People* v. *Wendel*, Id. 260, 263; *Rhodes* v. *Sperry & Hutchinson Co.*, 193 id. 223; *Boswell* v. *Security Mutual Life Ins. Co.*, Id. 465; *People ex rel. Provident Sav. Life Assur. Soc.* v. *Miller*, 179 id. 227.

If, as claimed, Mr. Horne has become incompetent to continue to act as trustee by reason of the subsequent legislation of this state, his removal can be sought in an independent proceeding to that end. Code Civ. Pro. §§ 2569, 2570, 2571. His vested interests ought not to be disturbed in some collateral proceeding. In a direct proceeding Mr. Horne's alleged disqualification may be the subject of a more serious consideration than is afforded on a mere settlement of a decree in a collateral proceeding.

It is apparent, I think, from the authorities that Mr. Horne was not originally incompetent to take the trusteeship conferred on him by the will of Mr. Ripley, and that he was vested with it by the ordinary operation of the will itself. Let me summarize my present conclusion: Chapter 443 of the Laws of 1914, which amended the provisions of the Code relating to Surrogates' Courts, first provides (Code Civ. Pro. § 2564) that no person who is a nonresident alien is competent to serve as a testamentary trustee. Prior to that amendment there was no provision of the Code prescribing the qualifications of a testamentary trustee, but section 2817 provided that a testamentary trustee could be removed if he was disqualified or incompetent to act as executor. A nonresident alien was incompetent to act as executor. As Mr. Ripley died prior to the enactment of chapter 443 of the Laws of 1914, the amendment affected by that chapter does not apply to the qualifications of the persons named as trustees in his will. A person named as trustee in the will derives

his authority wholly from the will, and until he has been removed by this court it would seem that he is entitled to assume the responsibilities and perform the duties of trustee. As the executors have accounted for the principal of the trust fund and ask the court to direct that it be paid over to the trustees, and as it appears that the foreign trustee named in the will has not been removed by this court, the decree is correct in providing for the payment of the trust fund to the three trustees jointly. This of course is without prejudice to any subsequent independent and direct proceeding to remove the nonresident trustee. *Lane* v. *Lewis*, 4 Dem. 468.

I observe incidentally that there is a supplemental account in this proceeding. It is a rule of this court that a supplemental account cannot be settled without a new citation or waiver by all concerned. Here there can be no waiver, for there appears to be an infant in court. But I should like to hear counsel again on this point. There appears to be also some question as to the amount of costs and allowances. On these two points I desire to hear counsel before signing the decree. I should be much obliged if they would therefore appear before me again at my chambers at ten-thirty A. M. on a day to be fixed by them, giving two days' cross-notice of hearing. I shall then proceed on the grounds partly stated to settle and make the final decree required in this proceeding.

Decreed accordingly.