In the Matter of the Estate of ALFRED CORNING CLARK, Deceased.

Surrogate's Court, Otsego County, February 28, 1930.

*Andrew J. McNaught* [*Donald H. Grant, Henry A. Stickney* and *Hugo Kohlman* of counsel], for the petitioner.

*Clarke & Kresel* [*Nathan L. Miller* and *Isidor J. Kresel* of counsel], for the respondent Jens C. L. Skougaard, as trustee and individually.

*Prince & Burlingame* [*Frederic A. Burlingame* of counsel], for Douglas Alexander, individually and as trustee, etc.

*Hinman, Howard & Kattell [Roger I. Clark* of counsel], for Edward Severin Clark, Frederick Ambrose Clark and Stephen Carlton Clark.

*Owen C. Becker*, as special guardian for Alfred Corning Clark, Robert Vanderpoel Clark, Elizabeth Scriven Clark, Stephen Carlton Clark, Jr., and Ethel Stokes Clark, infants.

CLOSE, S. The last will and testament of Alfred Corning Clark, who died a resident of Otsego county, was probated by this court May 12, 1896. Jens Christian Lund Skougaard was named as one of the trustees of certain trusts created by the will of Mr. Clark and has acted as a trustee thereunder to the present time. It appears that Mr. Skougaard was a native of Norway, but became a citizen of the United States by naturalization in the month of May, 1898, substantially two years after the probate of Mr. Clark's will.

Robert Sterling Clark, who is a son of testator and beneficially interested in said trusts, instituted this proceeding for the removal of Mr. Skougaard as trustee. All the other persons interested in the trusts, including Mr. Skougaard's cotrustee, are parties respondent. The adult respondents join with Mr. Skougaard in opposing petitioner's application, while the infant respondents, by their special guardian, submit their rights to the protection of the court.

Petitioner alleges in substance that Mr. Skougaard has ceased to be a citizen of the United States, and is now an alien not an inhabitant of this State, and that this condition has prevailed since about the year 1919, and claims that if these allegations are established his removal as trustee is mandatory by virtue of section 94 of the Surrogate's Court Act, and section 99, subdivision 1, of the Surrogate's Court Act, notwithstanding the provisions of section 101 of said act.

The adult respondents in their answers, among other things, interposed certain affirmative defenses founded upon the assumption that even if the aforesaid allegations of petitioner are true, nevertheless the surrogate may, in his discretion, dismiss the petition under section 101 of the Surrogate's Court Act.

The petitioner moved to strike out these defenses on the ground that under such circumstances the trustee's removal is mandatory and that consequently the defenses, addressed to the discretion of the court, raise no issue and cannot be considered.

These motions are now before me for decision, and in disposing of them the sole question to be determined, as I view it, is this: Assuming that Mr. Skougaard is now an alien not an inhabitant of this State, is his removal mandatory or is it discretionary under the aforesaid conditions?

Sections 99, 100 and 101 of the Surrogate's Court Act regulate

proceedings for the removal of trustees and the revocation of letters issued to executors, administrators and guardians. These sections were formerly sections 2569, 2570 and 2571 of the Code of Civil Procedure as enacted by chapter 443 of the Laws of 1914, commonly called the revision of 1914, and have undergone no substantial change since thus enacted.

From 1880 until chapter 443 of the Laws of 1914 took effect, proceedings for revocation of letters issued to executors and administrators were governed by sections 2685, 2686 and 2687, as added to the Code of Civil Procedure by chapter 178 of the Laws of 1880. Section 2817, added by the same chapter, related to proceedings for removal of testamentary trustees. Other sections provided for revocation of letters of guardianship. I believe these sections of the Code remained in force, without material change, until the revision of 1914, and were operative at the time Mr. Clark's will took effect and Mr. Skougaard's trusteeship commenced. During that period it was the law, as I understand it, that a non-resident alien was not disqualified from acting as a testamentary trustee and removal from office was discretionary, while an executor or administrator similarly situated could not serve, and revocation of letters was mandatory. (*Matter of Engel*, 155 App. Div. 467, 469; *Matter of Ripley*, 101 Misc. 465.)

Prior to the 1914 revision, in a proceeding for revocation of letters testamentary or of administration, under the aforesaid sections 2685 and 2687 of the Code of Civil Procedure, if any of the objections enumerated in section 2685 were established to the surrogate's satisfaction, it was mandatory, under section 2687, that he make a decree revoking letters, except that the surrogate was expressly vested with discretionary power if the objections were based upon subdivisions 3, 4 or 5 of section 2685. One of the instances where revocation of letters was mandatory was under subdivision 1 cf section 2685. This subdivision referred, I believe, to those sections from which section 94 of the present Surrogate's Court Act is derived, but which did not, prior to 1914, include testamentary trustees. Section 94 of the Surrogate's Court Act refers to persons incompetent to receive letters or act as testamentary trustees, and in connection with section 99, subdivision 1, of the Surrogate's Court Act, forms the basis of petitioner's motions.

By the revision of 1914, section 2685 was revised and made a part of section 2569 of the Code of Civil Procedure, now section 99 of the Surrogate's Court Act. The new section was broadened so as to include not only executors and administrators, but also trustees and guardians. Section 2687 was also revised and became a part of section 2571 of the Code of Civil Procedure, now section 101

of the Surrogate's Court Act. This new section likewise includes trustees and guardians, while the former section 2685 applied only to executors and administrators. Section 101 of the Surrogate's Court Act reads as follows: " § 101. Hearing; decree; testamentary trusts not affected. Upon the return of a citation, issued as prescribed in the last section, the surrogate may make a decree revoking the letters issued to, or removing the respondent, or may, in his discretion, dismiss the proceedings upon such terms as justice requires. Where an executor or an administrator is also a testamentary trustee, a decree revoking his letters as administrator or executor does not affect his power or authority as testamentary trustee, except in the case specially prescribed for that purpose, in section one hundred and seventy of this act."

Former section 2687 read as follows: " § 2687. Hearing; decree. Upon the return of a citation, issued as prescribed in the last section, if the objections, or any of them, are established to the surrogate's satisfaction, he must make a decree, revoking the letters issued to the person complained of. But the surrogate may, in his discretion, dismiss the proceedings, upon such terms, as to costs, as justice requires, and may allow the letters to remain unrevoked, in either of the following cases:

" 1. Where the case is within subdivision third of the last section but one, if the direction of the surrogate or the provision of law is obeyed, and suitable amends made to each person injured by the neglect or refusal to obey it.

" 2. Where the case is within subdivision fourth of that section, if the person cited is entitled to letters, notwithstanding the false suggestion.

" 3. Where the case is within subdivision fifth of that section, if the executor gives, within a reasonable time, not exceeding five days, a bond, as prescribed in article first of this title."

It will be observed that section 2687 was in part mandatory and in part discretionary — discretionary in three instances specifically mentioned, otherwise wholly mandatory. The section read " must make a decree." Section 101 of the Surrogate's Court Act, without exception or reservation, says " the surrogate may make a decree," and also says " or may, in his discretion, dismiss the proceeding." By the plain and unequivocal language of the section removal or revocation of letters is wholly discretionary with the surrogate upon all of the grounds set forth in section 99 of the Surrogate's Court Act. It is clear that the Legislature so intended. Words indicating a purpose to curtail this power, by reason of any of the provisions of section 94 of the Surrogate's Court Act, are conspicuously absent. Had the Legislature intended to make

removal or revocation of letters mandatory in any instance it certainly would have said so in as clear and concise language as is contained in former section 2687. In view of the fact that section 101 of the Surrogate's Court Act is in part derived from and supersedes former section 2687, it is apparent, after comparing the two sections, that the Legislature contemplated vesting in the surrogate discretionary power in all cases. It is equally manifest that the Legislature aimed at uniformity as to grounds, procedure and final disposition in proceedings for revocation of letters issued to executors, administrators and guardians, and for the removal of trustees, and that its purpose was to leave unchanged the discretionary power theretofore vested in surrogates regarding the removal of testamentary trustees, but intended to enlarge and extend such powers regarding the revocation of letters issued to executors, administrators and guardians. The revisers' note, under section 101 of the Surrogate's Court Act, is to the effect that the mandatory provisions were to be abolished and the surrogate allowed in every case to exercise his discretion. A similar position is taken by the text writers. (Jessup-Redfield [1925 ed.], p. 890; New Surrogate's Code, Analyzed by Charles L. Withrow, p. 92.)

I do not think this interpretation conflicts with section 94 of the Surrogate's Court Act. The purpose of this section is to prevent, in the first instance, persons within certain classes, therein enumerated, from receiving letters or becoming trustees. Section 96 of the Surrogate's Court Act points the way for the enforcement of the provisions of that section. These sections are aimed at the original grant of letters and qualification of trustees, but after letters are issued or a trustee qualifies a wholly different situation prevails. It then becomes a question of removal or revocation of letters which these sections do not purport to regulate. Section 94, considered in connection with subdivision 1 of section 99, affords a basis for a proceeding to revoke letters or to remove a trustee, but the disposition of such a proceeding is wholly controlled by the subsequent section enacted for that purpose, viz., section 101.

When enacting the aforesaid sections the Legislature, of course, had in mind the prudent administration and preservation of estates and trust property. It clearly anticipated that a condition might exist or a situation arise where it would not be advisable to revoke letters issued to or remove from office a fiduciary, notwithstanding the provisions of section 94. Unquestionably the Legislature deemed it wise to leave the disposition of such matters wholly to the discretion of the surrogate, so that each particular case could be judged by its own peculiar circumstances and conditions and disposed of, in the words of the statute, " as justice requires."

For the foregoing reasons the motions are denied.