MAGEE, et al. *v.* MAGEE'S ESTATE.

No. 41033 April 27, 1959 111 So. 2d 394

*Green, Green & Cheney,* Jackson; *Arrington & Arrington, Lena Zama,* Hazlehurst, for appellants.

*Henley, Jones & Henley,* Hazlehurst, for appellees.

Kyle, J.

This case is before us on appeal by Mrs. Emma Magee and John I. Magee, Jr., from a decree of the Chancery Court of Copiah County approving and allowing the Third and Final Account of the Deposit Guaranty Bank and Trust Company, Executor, and James B. Magee, co-executor of the last will and Testament of John I. Magee, Sr., deceased, and authorizing and directing the executors to transfer the remaining assets of the estate of the deceased, after the payment of debts, taxes and specific legacies, to the Deposit Guaranty Bank and Trust Company, Trustee under the will of the deceased.

The record shows that John I. Magee, Sr., a resident citizen of Copiah County, died on September 10, 1952. The testator left surviving him his widow, Mrs. Emma Magee, one son, John I. Magee, Jr., and three grandchildren, namely, John I. Magee III, Jim Magee, also known as "James B. Magee," and Mrs. Gertrude Magee Middleton, children of John I. Magee, Jr. The last will and testament of the deceased and two codicils thereto were duly admitted to probate by a decree of the Chancery Court of Copiah County on December 6, 1952, and letters testamentary were duly issued to the Deposit Guaranty Bank and Trust Company, as executor, and to James B. Magee and John I. Magee, as co-executors, a few days thereafter. The will was dated December 17, 1946; the first codicil was dated February 8, 1952; and the second codicil was dated July 23, 1952.

In Item I of the will the testator bequeathed to his wife the sum of $10,000 for the period of her natural life, with authority to use the same and make any disposition thereof that she might desire during her lifetime, but if any portion thereof should remain at her death, the same to revert to the testator's estate and become a part of the trust fund thereinafter provided for. The testator in Item I also bequeathed specific legacies to each of his three grandchildren, and to his son, John I. Magee, a

niece and a nephew, and the Old Ladies' Home at Jackson.

In Item II of the will the testator devised and bequeathed to his wife for the period of her natural life, his residence property, in the City of Hazlehurst, and directed that at the death of said son title to all of said property should be vested in his three grandchildren.

In Item III the testator devised and bequeathed to his son, John I. Magee, a tract of farm land situated in Copiah County, for the term of his natural life, and directed that at the death of said son said tract of land should revert to the testator's estate and become a part of the trust fund provided for in said will.

In Item IV of said will the testator devised to each of his three grandchildren specific parcels of real estate, in the City of Hazlehurst, with the store buildings and other improvements located thereon, for the period of their natural lives. The testator then provided in Item IV as follows: "In the event of the death of any legatee or legatees under this item within twenty-five (25) years after the death of the testator, the title to the property devised in this item to the respective legatee or legatees shall become vested in the heirs of the body of such legatee or legatees, subject, however, to the condition that said property may not be sold or disposed of until the expiration of twenty-five (25) years from the death of the testator, and in the event any such legatee or legatees shall die within twenty-five (25) years of the testator's death without leaving children or grandchildren, the title to such property so devised to said legatee or legatees shall revert to my estate, and shall become a part of the trust fund hereinafter provided for, and subject to the provisions thereof. At the expiration of twenty-five (25) years from the death of the testator, the title to the property bequeathed in this item shall become vested in fee simple in the respective legatees mentioned above provided said legatee or legatees are then living; other-

wise, said title shall become vested in fee simple uncondi-
tionally in the heirs of the body of such legatee or lega-
tees, provided children or grandchildren of said deceased
legatee be then living. It being my intention to remove
all restrictions and conditions upon the titles to the prop-
erty bequeathed in this item of my will at the expiration
of twenty-five (25) years from my death.''

In Item V of said will the testator authorized and em-
powered his son, John I. Magee, Jr., to execute oil, gas
and mineral leases on the land bequeathed to him; and
the testator also authorized and empowered each of the
legatees to whom real estate had been devised in the
preceding items of the will to execute lease contracts
on said property for periods not to exceed ten years, sub-
ject to certain conditions therein stated.

In Items VI and VII of said will the testator pro-
vided for the payment of claims against his estate and
the cost of erecting a suitable marker on the Magee
burial lot in the Hazlehurst cemetery.

In Item VIII of said will the testator devised and be-
queathed the residue of his estate as follows:

"ITEM NO. VIII. I do hereby give, devise and be-
queath all of the rest and residue of my estate, after
the payment of debts, taxes and specific bequests and
legacies mentioned above unto the Deposit Guaranty Bank
& Trust Company, of Jackson, Mississippi, or its corpor-
ate successors IN TRUST, for the following uses and
purposes:

"(A) To receive, manage, lease, rent, sell, dispose
of, and convey said property as fully and completely and
with the same powers and effect as I might do if liv-
ing. It is intended to vest full power, authority and
discretion with respect to the management of this trust
estate in said trustee, and by setting forth specific pow-
ers hereinafter, it is not intended that the same shall
thereby limit the general powers and authority herein
conferred.

"(B) To retain any of the original investments or other property constituting my estate at the time of my death, regardless of the character of said investments or other property or whether they be such as are authorized to law for investment by fiduciaries, for such time as to it shall seem best and to dispose of any such property by sale or exchange or otherwise as and when it shall deem advisable.

"(C) To invest and reinvest funds in such stocks, bonds, notes, mortgages or other property as it shall deem advisable.

"* * *

"(G) To receive all rents, profits, and income of every nature due my estate.

"* * *

"(R) That said Trustee shall distribute the net income accumulated from said trust fund once every two years equally among the following persons, to-wit:

"Mrs. John I. Magee, Sr. (also known as Mrs. Emma Magee); John I. Magee, Jr.; John Magee, III; Jim Magee; Mrs. Gertrude Middleton.

"In the event of the death of any of said parties (other than the first two named above) leaving descendants, heirs of such parties shall take the share or shares of such decedent or decedents.

"(S) At the expiration of twenty-five (25) years after my death, all that part of this trust fund remaining after payment of cost, expenses and taxes shall be equally divided among the following: My wife, Mrs. Emma Magee, if then living; my grandson, John Magee, III; my grandson, Jim Magee; my granddaughter, Mrs. Gertrude Magee Middleton; my great grandson, Arthur Barnes Middleton, III; and my great granddaughter, Isla Patricia Middleton; and in the event of the death of either of said parties (other than my wife) leaving heirs of their body, then such heirs shall take the share of such decedent or decedents."

In Item X the testator provided for the payment of compensation to the trustee; and in Item X the testator nominated and appointed the Deposit Guaranty Bank and Trust Company of Jackson, Mississippi, and his grandson, Jim Magee, as co-executors of the will, and stated that it was his desire that the trustee therein named should at all times consult the said Jim Magee with reference to the management and administration of said trust funds.

In the first codicil dated February 8, 1952, the testator ratified a bequest theretofore interlined in Item I of the will bequeathing to his nephew, Chester I. Magee, the sum of $1,000; and the testator also bequeathed to his said nephew the sum of $4,000 in addition to the $1,000 mentioned above. In the second codicil, dated July 23, 1952, the testator bequeathed to his wife, Mrs. Emma C. Magee, the sum of $10,000 in U. S. Treasury bonds, "to be handled as she sees fit during her life," and at her death the unexpended balance, if any, to revert to the trust fund—said legacy being in addition to the $10,000 in money bequeathed to her in the will. The testator also bequeathed his home place and the contents of the home, as long as the testator's wife lived, to his son, John I. Magee, Jr., and at his death said property to go to his three children. The testator also provided in said codicil that the life of the trust fund should be 15 years instead of 25 years, as shown in the original will; and John I. Magee, Jr., was appointed a co-executor of the will, in addition to the Deposit Guaranty Bank and Trust Company and Jim Magee, who had been named as executor and co-executor in the original will.

The property owned by the testator at the time of his death consisted of the several parcels of real estate mentioned in the will and personal property, including bonds, stock and money on deposit. No copy of the inventory appears in the record, but, according to a reference made to the inventory in the decree approving the

Executors' First Annual Account, the inventory showed an aggregate sum of $76,734.62. It appears from the record that the testator also owned lands in the State of Texas; but there is nothing in the record to indicate the amount or the value of said lands. The only information which we have concerning the property owned by the testator in the State of Texas, is the statement contained in the executors' petition for approval of their Third Annual and Final Account. In that petition the executors stated that the testator owned substantial property in Texas, consisting mainly of real estate, which the testator contemplated selling at the time the will was executed but failed to dispose of during his lifetime—property which the executors had been advised "may be retained for a considerable period of time due to the possibility of oil being developed thereon."

The record shows that the executors filed a First Annual Account covering the period from the date of the testator's death to September 28, 1953, which was examined and approved by the court on April 26, 1954; and a Second Annual Account covering the period beginning September 28, 1953, and ending September 2, 1954, which was examined and approved by the court on October 27, 1954. The record also shows that decree was entered on June 1, 1955, which authorized the executors to pay to Mrs. Emma Magee the bequest of $10,000 left to her under the will, and to deliver to the respective beneficiaries named in the will the real estate devised to them in Items II, III and IV of the Will. In that decree it was expressly provided, however, as follows: "The extent of the estates given to James B. Magee, John I. Magee, III, and Mrs. Gertrude Magee Middleton, and the validity of the trust created under the will are not by this decree intended to be passed on nor the rights of beneficiaries in any way prejudiced; but the rights of these parties under their several life estates, being certain and fixed, are herein recognized; and said

parties remain free to have the Court, when the issue is made up, determine the validity of the limitations and of the trust; and the acceptance by said parties shall not thereasto in any way prejudice any of them." The decree also recited that it was entered pursuant to a petition filed by the Deposit Guaranty Bank and Trust Company, executor, and John I. Magee, Jr., and James B. Magee, individually and as co-executors, and also by Mrs. Emma Magee, Mrs. Gertrude Magee Middleton and John I. Magee, III.

Only parts of the record of the administration proceedings have been included in the record on this appeal. We do not have before us copies of the executors' annual accounts or the executors' Final Account and supplements thereto. But from the briefs of counsel and the petitions which appear in the record it appears that the executors' Third Annual and Final Account was filed sometime after August 1, 1955, and that a supplement to that account was filed sometime during the month of December 1955; and on January 3, 1956, the Deposit Guaranty Bank and Trust Company, executor, and James B. Magee, co-executor, filed their petition asking for the approval of said Third Annual and Final Account and for authority to sell the remaining assets on hand to provide funds for the payment of additional Federal estate taxes, state inheritance taxes and administration expenses, and for authority to make a final distribution and settlement of the estate. In that petition the above named executors made the statement concerning the property owned by the testator in the State of Texas which has been referred to above. In that petition the executors also stated: "That under the laws of the State of Texas, a foreign banking corporation is not permitted to qualify as executor or trustee; and that, therefore, the Deposit Guaranty Bank and Trust Company has not qualified as executor or trustee in the State of Texas." In the petition the Deposit Guaranty

Bank and Trust Company entered its appearance both as executor and as trustee, "in order that there may be determined in this proceeding whether or not there will be any funds remaining after the completion of the administration to be paid into said trust fund."

John I. Magee, Jr., co-executor, did not join in that petition. On January 11, 1956, Mrs. Emma C. Magee, the surviving widow, and John I. Magee, Jr., individually and as co-executor of the estate of his father, filed an answer to the petition and a counterclaim. In their answer and counterclaim the respondents admitted the material allegations of the petition, but alleged that Mrs. Emma C. Magee was entitled to certain interest which had accrued on the U. S. Treasury bonds delivered to her prior to the date of the filing of the executors' Final Account; and the respondents averred in their answer that no further compensation should be paid to the executors.

The cause was heard at the regular April 1957 term of the court. None of the issues set forth in the answer and cross-claim were insisted upon during the hearing. No exceptions were filed to the executors' Final Account. Oral objections were interposed, however, by the attorneys for Mrs. Emma Magee and John I. Magee to the entry of a decree approving the executors' Final Account and directing that the remaining assets be paid over to the Deposit Guaranty Bank and Trust Company, as trustee, on the grounds: (1) That the Deposit Guaranty Bank and Trust Company was not qualified to do business in the State of Texas, and that there was then pending in the State of Texas an ancillary administration of the estate, which was being carried on by the ancillary administrators in the courts of Texas; and (2) that the trust established under the will and codicil of John I. Magee, Sr., deceased, was void for the reason that it embraced realty and personal property and was

limited for a period of time in excess of that allowed by law.

The chancellor overruled the objections, and in doing so stated his reasons therefor as follows:

"BY THE COURT: This will was probated some five years ago. * * * The Court is of the opinion that the provisions of this will should be carried out and this property turned over to the Trustee appointed by the deceased testator. If there be any question further, it can come up on the final report. The Court is of the opinion that this account now before us should be passed on, approved or disapproved. There is no contest, no protest, no objection made to any feature of it, and the account is going to be approved and is approved, and this property ordered turned over to the Trustee, the Deposit Guaranty Bank and Trust Company."

The chancellor found that all claims against the estate had been paid except one claim for the sum of $168.76 due H. Bowman and certain accrued rents due the devisees of the real estate, and the chancellor ordered that these claims be paid out of the balance of the funds on hand. The chancellor found that all legacies and estate and inheritance taxes had been paid, and that the remaining assets should be paid over to the trustee named in the will. A decree was therefore entered approving the executors' Third Annual and Final Account; and in that decree the court ordered that the executors convert into cash the remaining bonds belonging to the estate, or a sufficiency thereof to carry out the terms of the decree, and after the payment of the claims mentioned above and the additional allowances made for executors' commissions and attorneys' fees, that the remaining assets be paid over to the Deposit Guaranty Bank and Trust Company as trustee under the will, and that the executors, after complying with the terms of the decree, file a final report showing such compliance.

The appellants' attorneys have assigned and argued two points as grounds for reversal of the decree of the lower court: (1) That the trust created under the will is a unit, which includes the property, both real and personal, in Mississippi and in Texas, that there can be no separation of the trust in two parts, and that since the Deposit Guaranty Bank and Trust Company is not qualified to serve as trustee under the laws of the State of Texas, the trust is void; and (2) that the Mississippi trust contravened the statutes of Mississippi as to restraint upon alienation and against perpetuities by the attempted creation of a gross term of inalienability, primarily for 25 years, but later under the codicil reduced to 15 years.

■■■ In support of their first assignment of errors the appellants' attorneys say, that the Deposit Guaranty Bank and Trust Company has admitted that the laws of the State of Texas do not permit it to qualify as a trust company or perform the functions of a trustee in that state, and that "it was unlawful for the chancery court of Copiah County to create a separate trust in Mississippi as to the remaining assets in this state for administration by the bank and to compel the creation of a second trust, with another trustee, in the State of Texas as to the Texas assets, particularly land."

■■■ But we think there is no merit in that contention. The trust in this case was not created by the Chancery Court of Copiah County but by the testator in his will. The title and right of a testamentary trustee comes from the will itself. Re Will of Risher, 227 Wis. 104, 277 N. W. 160, 115 A. L. R. 790. "The rights and status of a testamentary trustee as such * * * flow exclusively from the will, and not from proceedings on the will taken in the Surrogate's Court; neither probate nor letters of trusteeship being the foundation of his trusteeship, but the will itself." In Re Ripley, 101 Misc. 465, 167 N. Y. S. 162.

 The Deposit Guaranty Bank and Trust Company has not disclaimed the trust in this case, but on the contrary has signified its willingness to accept the trust and has asked that the assets now in the hands of the executors be paid over to it. No statute or court decision has been called to our attention by counsel for any of the parties to substantiate the statement, which appears in the appellees' petition for approval of the executors' Final Account, "That, under the laws of the State of Texas, a foreign banking corporation is not permitted to qualify as executor or trustee." But even if the Texas Court should hold that the Deposit Guaranty Bank and Trust Company cannot qualify as trustee and administer the trust in this case such holding would not affect the validity of the trust. "It is a doctrine of universal recognition, in some jurisdictions embodied in statutes which are merely declaratory of the general rule of equity, that a trust will never be permitted to fail for want of a trustee. 90 C. J. S., 139, Trusts, par. 211.

 On sufficient grounds and pleadings a testamentary trustee may be removed, and a court of equity has the power to remove a testamentary trustee in protecting the beneficiaries. Woods v. Chrissinger, 230 Ala. 678, 163 So. 318. But no pleadings have been filed in this case asking for the removal of the bank as trustee, and no cause has been shown for such removal.

 The bank was appointed by the will to the trust. The bank derived its authority from the will, and until it has been removed by the court it is entitled to assume the responsibilities and perform the duties of trustee.

We are not called upon to determine in this proceeding what steps the Deposit Guaranty Bank and Trust Company, as trustee, may be required to take to obtain possession of the lands belonging to the trust estate which are situated in the State of Texas, or to determine whether the bank in the management of the trust property

in that state must obtain a permit to do business in that state. If any question should arise concerning the trustee's right of possession and control of the lands in the State of Texas, such question would have to be determined by a court of competent jurisdiction in that state. If the bank should neglect or refuse to take such steps as may be required legally, after the executors' accounts are settled, to enable it to discharge properly its duties as trustee with respect to the trust property situated in the State of Texas, such action may be taken at that time as the circumstances may warrant to preserve the trust property and carry out the provisions of the will.

■■ The bank had a right to delay qualifying as trustee until its accounts as executor were settled. "An executor may properly delay to qualify as a trustee until his accounts as executor are finally settled." 90 C. J. S. 214, Trusts, par. 242, and cases cited.

■■ The fact that the bank did not qualify as executor in the State of Texas, but permitted ancillary letters to be issued to the two co-executors only, is, in our opinion, a matter of no importance in the determination of the issues presented on this appeal. There is a fundamental distinction between the office of executor and that of trustee. "The fact that one named as executor and trustee fails to qualify as executor will not necessarily preclude his acting as trustee, unless the trust is annexed to the executorship by the terms of the will." 90 C. J. S., 214, Trusts, par. 242. ■■ "It is well understood that a declination of an executorship is not a declination of a trusteeship conferred by the will. Redfield (5th Ed.) 270, citing Williams on Executors." In Re Ripley, 167 N. Y. S. 162, 101 Misc. Rep. 465.

If ancillary letters were granted to the co-executors by a court of competent jurisdiction in the State of Texas, as the briefs of counsel indicate, it is reasonable to assume under the facts in this case that the personal assets remaining in the hands of the ancillary representa-

tives, after the payment of claims of local creditors, if any, will be transferred to the domiciliary representatives in Mississippi or the trustee under the will. 34 C. J. S., 1253, Executors and Administrators, par. 1005.

■■ The appellant's attorneys in their brief frankly state that, in their judgment, the second point mentioned in their assignment of errors, in which they challenge the validity of the trust on the ground that it contravenes the rule against perpetuities, is not appositely presented. That statement, in our opinion, is correct, for the reason that no pleadings were filed in the lower court which callenged the validity of the trust. Yet the briefs filed by the attorneys for the respective parties contain exhaustive discussions of the rule against perpetuities and Section 838, Mississippi Code of 1942, Recompiled.

■■ It is not necessary that we discuss at length the rule against perpetuities, or the provisions of the statute referred to. Section 838, Code of 1942, Recompiled, deals only with conveyances or devises of lands, and is not applicable to personal property. See Thomas v. Thomas, 97 Miss. 697, 53 So. 630. The property ordered to be paid over to the trustee in the decree appealed from in this case consists of cash and other intangible personal property. The decree does not deal with the real estate owned by the testator at the time of his death. The only question presented for decision by us at this time is, whether the chancellor erred in directing that the residue of the personal property now in the hands of the executors be paid over to the testamentary trustee under the terms of the will.

■■ "The rule against perpetuities prohibits the creation of future interests or estates which by possibility may not become vested within a life or lives in being at the time of the testator's death or the effective date of the instrument creating the future interest, and twenty-one years thereafter, together with the period of

gestation when the inclusion of the latter is necessary to cover cases of posthumous birth.'' 41 Am. Jur., 50, Perpetuities and Restraints on Alienation, par. 3 A.

■■ ■ ''No limitation of a present life estate, or of a present term of not more than twenty-one years, can be bad for remoteness.'' Gray, The Rule Against Perpetuities, Fourth Edition, p. 228, sec. 225.

■■ ■ The testator, in our opinion, had a right to devise and bequeath the residue of his personal property to the bank in trust for the uses and purposes stated in the will, and to fix the duration of the trust at 15 years as stated in the codicil. The will and codicils must be read together as one document. ■■ ■ The term of the trust was fixed by the codicil at 15 years, and there was no violation of the rule against perpetuities.

We think there was no error in the court's decree directing that the remaining assets of the estate be paid over to the trustee as provided for in the will.

For the reasons stated above the decree of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Gillespie, JJ.,* concur.