404 So.2d 1373 (1981)
Anthony Ray MAY, Executor of the Estate of Carl C. May, Deceased
v.
David R. HUNT, Guardian Ad Litem for Anthony Barrett May, et al., Minors.
No. 52215.
Supreme Court of Mississippi.
October 14, 1981.
*1374 Dulaney & Dulaney, William P. Dulaney, Tunica, for appellant.
Sullivan, Hunt, Spell, Shackelford & Henson, David R. Hunt, Clarksdale, for appellee.
En Banc.
WALKER, Justice, for the Court:
Anthony Ray May, the executor of the Estate of Carl C. May, filed a petition for the construction of his father's will in the Chancery Court of Coahoma County, Mississippi. He sought to have declared invalid a trust created by the will, contending said trust was in violation of the rule against perpetuities. The chancellor held that the trust created by the will did not violate the rule against perpetuities and ordered that the trust be given full effect in the administration of the estate. The executor has appealed.
Carl C. May died testate on March 23, 1973, survived by seven children who are the beneficiaries of the trust in question: Anthony Ray May (executor), Tony C. May, Rickey L. May, Pamela Joy May, Sheila Ann May, Dianne May, and Carl May, Jr. The testator left all his property, real and personal, to his seven children to share equally per stirpes, "to be held in trust ... until the year 2022, for their use and benefit to sell and dispose of and do any and all other acts that they may desire so long as they shall live."
The decedent's widow, Louise J. Wilson May, renounced the will and claimed a widow's share. She subsequently was paid the sum to which she was entitled and it is stipulated that she has no further interest in the administration of the estate. Other interested parties include five grandchildren of the decedent. The chancellor appointed David Hunt as guardian ad litem for these grandchildren and any unborn grandchildren or descendants of May's seven children.
The pertinent provisions of the last will and testament of Carl C. May are as follows:
ITEM III.
I hereby give, devise and bequeath unto my children, TONY C. MAY, ANTHONY RAY MAY, RICKEY L. MAY, PAMELA JAY MAY, ALIELIA ANN MAY, DIANNE MAY, AND CARL MAY, JR. to share equally, per stirpes, all of my property, both real, personal, and mixed, of whatsoever kind and nature and wheresoever situated including lapsed legacies and bequests of which I *1375 shall die seized or possessed or to which I shall be entitled at the time of my death or over which I shall have any power of appointment, to be held in trust in accordance with Item # IV. until the year 2022, for their use and benefit to sell and dispose of and do any and all other acts that they may desire as long as they shall live. [NOTE: Alielia Ann May referred to above is Sheila Ann May; Pamela Jay May referred to above is Pamela Joy May].
ITEM IV.
CARL C. MAY TESTAMENTARY TRUST
ITEM IV.: I, CARL C. MAY hereby give, devise and bequeath to CHARLES C. FINCH AND OR D. BRIGGS SMITH, all my estate of whatsoever kind and nature and wheresoever situated; IN TRUST for the use and benefit of my children, TONY C. MAY, ANTHONY RAY MAY, RICKEY L. MAY, PAMELA JAY MAY, ALIELIA ANN MAY, DIANNE MAY and CARL MAY, JR. per stirpes, subject to the following provisions:
(a) Said trustee, shall take possession of all my estate, hold, manage, invest and reinvest and keep the same invested, and collect and receive the interest and income thereof for and during the period of the existence of the trust hereby created, and after paying all costs and expenses incident to the execution of this trust, shall until the year 2022 use the income from my estate, for the support, maintenance, care and education of my said children, per stirpes, paying such amounts as may be necessary for said purpose, in the discretion of said trustee either direct to my children, per stirpes, as may be deemed best by such trustee.
(b) After the year 2021 my executor and trustee shall transfer, convey and pay over the corpus of said trust with all gain, increases and accumalations (sic), if any, to my said children per stirpes, absolute and forever.
(c) My Testamentary Trustee with regard to the administration of my property placed in trust under this will, shall have full and complete power and authority to do any and all things deemed by him necessary and for the best interest of my estate and the beneficiaries of this will and trust as fully as I might do if living. Said powers shall include but not be limited to the power to sell property of all kinds and description; to buy property of all kinds and description; to borrow money and give liens on any property in my estate or any trust, and to enter into any and all kinds of contracts and agreements. It is my intention that the testamentary trustee shall have the fullest possible powers and shall exercise them without necessity of court authorization.
In his petition for the construction of the will, the executor requested the court to hold the testamentary trust created by Item IV of the will to be void and to declare the children owners in fee simple absolute, free and clear of the trust. The guardian ad litem filed an answer asking that the will's trust provision be upheld because the interests created by the trust were vested interests, not contingent interests, and thus not in violation of the rule against perpetuities.
The lower court, relying on Carter v. Berry, 243 Miss. 321, 136 So.2d 871, sugg. of error overruled, 140 So.2d 843 (1962), upheld the validity of the trust. Citing the elementary principle that the rule against perpetuities does not apply to vested interests, the Court found that the legal and beneficial interests in the trust vested immediately on the death of the testator.
The sole issue presented by this appeal is whether or not the provisions of this will violate the rule against perpetuities. A classic formulation of the rule is: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being after the creation of the interest." Gray, The Rule Against Perpetuities, § 201 (4th ed. 1942). Another definition is that stated in Magee v. Magee, 236 Miss. 572, 111 So.2d 394 (1959) as follows:
"The rule against perpetuities prohibits the creation of future interests or estates which by possibility may not become vested *1376 within a life or lives in being at the time of the testator's death or the effective date of the instrument creating the future interest, and twenty-one years thereafter, together with a period of gestation when the inclusion of the latter is necessary to cover cases of posthumous birth." 41 Am.Jur., 50, Perpetuities and Restraints on Alienation, par. 3A.
"No limitation of a present life estate, or a present term of not more than twenty-one years, can be bad for remoteness." Gray, The Rule Against Perpetuities, Fourth Edition, p. 228, sec. 225. (236 Miss. at 591-592, 111 So.2d 394).
The rule is not concerned with the postponement of the full enjoyment of a vested estate. It deals with remoteness of vesting and not with the duration of vested interests. Phelps v. Shropshire, 254 Miss. 777, 183 So.2d 158 (1966). In that case the Court also noted that "[a] trust is not invalid either in whole or in part merely because the duration of the trust may exceed the period of the rule against perpetuities, provided that the interests of all the beneficiaries must vest within the period. 1 Restatement (Second), Trusts § 62 at 168 (1959); 2 Restatement (Second) Trusts § 365 (1959)." See also, 1 Scott on Trusts § 62.10 (2d ed. 1956).
It has also been stated: "A strict and technical application of the rule against perpetuities does not involve any limitation on the permissible duration of a validly created trust, as long as the interests of the cestuis will necessarily vest, if ever, within the period prescribed by the rule... ." 70 C.J.S. Perpetuities § 27 (1951).
The above stated principles are firmly embedded in our jurisprudence and are not questioned by the appellant. However, the appellant strenuously argues that the repeated use by the testator of the phrase "per stirpes" indicates the testator's intent to provide for contingent beneficiaries in the year 2022, these beneficiaries being the descendants of his children, per stirpes, living on January 1, 2022. He argues that the final beneficiaries of the trust do not have a vested interest because if one of the children should die before distribution of the estate, then the interest of that child would be defeated. If we understand this argument correctly it is that the use of the phrase "per stirpes" creates an implied condition that the children must survive the termination of the trust. This is not so.
At the outset, two cardinal rules of construction should be noted. In construing a will, the intention of the testator is controlling, unless the intention is invalid under the law. Also, the law favors the vesting of estates at the earliest time possible, and whenever there is doubt as to whether an interest is vested or contingent, the court will construe it as vested. With these rules of construction in mind and for the reasons which follow, we hold that the rule against perpetuities does not apply in this case.
The most comprehensive discussion of the law in Mississippi on the rule against perpetuities is that contained in Carter v. Berry, supra. The will in that case, in essence, left eighty percent of the testator's estate to trustees. The trust was to continue as an active trust, and to terminate "when my youngest grandchild (whether now living or hereafter born) shall become twenty-five years of age; provided, however, that in no event shall said trust continue for a longer period than twenty-five years from the date of this [will]." Upon termination of the trust, the trust estate remaining was to be "transferred, delivered over, divided and distributed by my trustees to my said grandchildren per capita." The will stated that no provision was made for the testator's two daughters, because the testator had previously made provision for them.
The daughters contended, and the lower court held, that this testamentary devise, bequest and trust violated the rule against perpetuities. In this court's original decision, it was held that the gift was to a class, which at that time consisted of those grandchildren then living. The court pretermitted any decision on participation in the class by grandchildren of the testator born after his death, but incidentally in a dictum observed that, in gifts of a life estate with remainder to a class, the remainder vests in *1377 those members of the class in being at testator's death, subject to being opened up for additional members before the date fixed for final ascertainment of membership. On suggestion of error, the Court discussed the "all or nothing" rule in class gifts of Leake v. Robinson, 2 Meriv. 363, 35 Eng.Rptr. 979 (1817). That rule is to the effect that a gift of property to be divided among a class of persons is totally invalid if it is possible that the interest of any member of the class would vest beyond the period of perpetuities. Or, to put it differently, a class gift is not "vested" in any member within the meaning of that word as used in the rule against perpetuities until the interests of all members have vested. Leach & Tudor, The Rule Against Perpetuities § 24.26 (1957). The Court noted that if it should apply the all or nothing rule to the trust created by the testator's will, the result would be invalidation of the entire gift to the testator's grandchildren, and inheritance of the estate by his daughters for whom he had already provided and whose participation in his estate he expressly excluded because of earlier provisions for them.
The Court declined to adopt the all or nothing rule of Leake v. Robinson. It held that the devise to the testator's grandchildren as a class did not violate the rule against perpetuities because vesting in the grandchildren occurred within the period of the rule against perpetuities. No grandchild could be born to the testator later than the time when the survivor of his two daughters died, and therefore the class would necessarily close at that time, at the end of lives in being, i.e., the daughters. The Court stated that the twenty-five-year provision in the will referred to the time of distribution of the estate, not to the time of vesting.
Although the Court could have ended its opinion at that point, it chose to consider an alternative theory for holding the gift to the grandchildren valid. After assuming that the gift to the class of grandchildren was contingent, the Court applied the doctrine of equitable approximation and held that the estate should be distributed to the testator's grandchildren when the youngest reached twenty-one years of age instead of twenty-five years of age.[1] The Court noted that the application of this doctrine would carry out the dominant, primary idea of the testator, and at the same time preserve the policy of the rule against perpetuities. The Court noted two reasons why it chose to decide the case on the second alternative theory. First, it noted that the gift to the grandchildren was a gift to pay and distribute when the youngest reached the age of twenty-five, which, the Court stated, made the gift prima facie contingent.[2] Second, the will contained several provisions indicating an intention to postpone vesting until the time of distribution.
There are two factors which distinguish the case at bar from Carter v. Berry. First, we do not construe the will in this case as creating a class gift. The overwhelming weight of authority holds that a gift to persons named in the language of the gift and also designated therein by relationship to the testator raises a presumption that the gift is made to them as individuals and not as a class. See Carter v. Sunray Mid-Continent Oil Co., 231 Miss. 8, 94 So.2d 624 (1957); Restatement, Property § 280 (1940); Simes and Smith, The Law of Future Interests § 612 (2d ed. 1956); Annot., 75 A.L.R. 773, 805 (1931); Annot., 61 A.L.R.2d 212, 269 (1958). Absent evidence of a contrary intent of the testator, the naming establishes the intent of the testator to make a gift distributively to the individuals so named and thus eliminates the possibility of a change in number.
*1378 Second, and perhaps most importantly, this will contains no factors indicating an intention to postpone vesting until the time of distribution. The intent of the testator is clear. He devised all of his estate to his seven named children, with a direction that they were not to take possession of the estate until the year 2022. A vested interest has been described as one in which there is a present fixed right either of present or of future enjoyment. In Hickman v. Hickman, 190 So.2d 853 (Miss. 1966), this Court stated that "an interest will be held to be contingent only where the testator's purpose to that effect is clearly shown, and between two or more reasonably possible periods for vesting, preference will be given to the earlier time, unless a contrary intention appears from the will. See Leach and Logan, Future Interests and Estate Planning 253-54 (1961); Simes and Smith, Future Interests, §§ 573, 576 (2d ed. 1956). Hickman involved a testamentary trust of a stated sum of money for each of two minors, to be "put in a fund so they will not start drawing their money until they start college." This Court affirmed the lower court's finding that this created an estate in the funds, vested in interest in the two minors, but not vested in possession. The Court stated as follows:
Moreover, the bequests do not contain a condition subsequent which would terminate the gifts to testator's nephew and niece. The money belongs to them, but they simply will not start `drawing it' until they start college. The fact that the words of gift to the intended takers consist of a direction to divide and pay over at some future date `is not a material factor in determining the existence of a requirement of survival to the date of distribution.' 3 Restatement of Property § 260 (1940). This `divide and pay over' rule provides that gifts made by way of a direction to pay are to be considered contingent upon survival of the named taker to the time of vesting and possession. Simes and Smith, Future Interests, § 657 at 120 (2d ed. 1956).
Many of the more recent decisions have repudiated the rule by indicating that the fact that the terms of the gift consist of a direction to divide and pay over is not significant in determining whether the interest is vested or contingent. See Simes and Smith, Future Interests § 658 at 129-30 (2d ed. 1956). Schlater v. Lee, 117 Miss. 701, 78 So. 700 (1918) indicates that this is the view in this jurisdiction, and we so hold. (190 So.2d at 855).
The appellant has attacked this trust as in violation of the rule against perpetuities. However, he has not shown that the devise to the children was contingent, although admitting that the rule applies only to contingent future interests. The argument advanced is that the attorney who drew the will must have known the technical meaning of the words "per stirpes" and used them to imply that to take, a child must survive the termination of the trust. In re Fedder's Trust, 187 Misc. 201, 61 N.Y.S.2d 335 (1946), involved a trust in which a somewhat similar use was made of the phrase "per stirpes." The settlor provided that the trust should be administered for the benefit of his daughter and upon the death of the daughter, the trustee was directed to pay the corpus of the trust to her children in equal shares, but if the daughter left no children surviving, then the trustee should pay the entire balance of the trust in equal shares to the settlor's named three brothers and two sisters "per stirpes and not per capita." The daughter died childless and prior to her death one brother and one sister of the settlor had died. The question for determination was whether the future estate created by the trust vested at the time of the death of the settlor or at the time of the death of his daughter, the life tenant. The Court held that the five brothers and sisters took vested estates and that the trust should be divided into five equal parts. In reaching this conclusion, the Court said:
The use of the phrase per stirpes and not per capita contained in the trust is meaningless. Following words of survivorship, they would have a definite meaning, but it is too far a cry and almost ridiculous to construe that phrase as containing words of survivorship or to say that the settlor who perhaps did not understand the *1379 meaning of the phrase, employed it to extend the trust to the issue of his brothers and sisters.
The only authority to the effect that the phrase "per stirpes" may sometimes enlarge a gift to "children" so that it will include "grandchildren" is 3 Restatement, Property § 285(2)(d) (1940). However, that authority is restricted to class gifts. The devise in this case was to seven named individuals, and was not a class gift.
For the reasons stated above, it is clear that the lower court was correct in holding that the trust did not violate the rule against perpetuities, because the beneficiaries' interests vested at the time of the testator's death. Upon the testator's death the seven children received a present fixed right to the immediate enjoyment of the income from the trust; and a present fixed right to the future enjoyment of the corpus of the trust. Both rights vested immediately and were subject to no contingencies. During the interim between the testator's death and the time when the children may enjoy the corpus of the trust, the legal interest will, of course, be vested in the trustee.
Although not specifically assigned as error, or argued in the court below, the appellant, in his rebuttal brief, contends that the devise is a form of a fee tail estate, prohibited by Mississippi Code Annotated section 89-1-15 (1972).[3] He raises an interesting question that if a testator may postpone the distribution of property in trust for a period of fifty years, then could he not postpone the distribution of the property for 100 years or 1,000 years? This argument confuses the rule against perpetuities with the separate but related common-law rule against indestructible trusts. In 2A Bogert, Trusts and Trustees § 218 (2d ed. 1979), there is an interesting discussion of this question, as follows:
A question which has led to some confusion and to the expression of contradictory views is whether a private trust, where the interests of all the beneficiaries are vested, must be limited by the settlor as to its duration, because of the requirements of some rule of law. Thus if a testator creates a trust to begin at his death and to last for fifty years, for the purpose of paying the net income to his children living at his death, does the fact that the term of years during which the trust is to last is greater than the twenty-one year period allowed by the Rule Against Perpetuities invalidate the trust? His children have vested interests in the income for the fifty year period which would pass to their successors if they died before the trust expired. There are no contingent interests under the trust, and so there is no possible violation of the Rule against Perpetuities by the terms of the trust. If the remainder following the trust is contingent until the end of the fifty year period, it will be void under the Rule, and it is possible ... that it may invalidate the entire trust with it, but that does not mean that the trust failed because of excessive duration but rather that the failure of the remainder caused the destruction of the trust.
... .
Some statutes provide that there is no limit on the duration of private trusts.
However, for the most part the question has not been decided by statute and must be determined as a matter of common law... . If there is a limitation on duration, it is [the] rule that a grantor may not postpone direct enjoyment of property for too long a time. It is not the common law Rule against Perpetuities. It is not concerned with vesting or alienation but with enjoyment by means of possession and the legal estate.
The case law has not been uniform as to holdings and reasoning. In many of the older cases it was held (or said by way of dictum) that a private trust, even though all interests under it were vested, must be limited in duration to the period *1380 of the Rule against Perpetuities (lives in being and/or twenty-one years). If not so limited, it was said to be void as "creating a perpetuity". Some decisions are to the effect that a trust limited to this period was valid, apparently implying that otherwise it would have been void... .
In other decisions, many of which are quite recent, it has been held that there is no common law rule limiting the duration of private trusts and that trusts need not be required by the terms of the instrument to terminate within the period of the Rule against Perpetuities.
... .
If there is a common law or statutory limitation on the period of duration of a private trust, and the trust instrument attempts to provide that the trust shall last for a period other than the permitted period, either of two results may follow. It has been held by many courts that the trust is void and the settlor or his successors are entitled to the property. Another view expressed by some authorities is to the effect that the trust will be enforced for a maximum lawful period, and that only the excessive period will be stricken. This latter result is in accord with the modern tendency to apply a doctrine similar to cy pres to the Rule against Perpetuities. (footnotes omitted).
Although according to the common law a private trust with definite beneficiaries is not void merely because it may endure longer than lives in being and twenty-one years, there is a conflict of authority on the question whether the public policy requires that a private trust be limited in duration even though all interests are vested. There is also a diversity of opinion as to the manner of effectuating such policy. 2A Bogert, Trusts & Trustees, Vol. 2A § 218; 70 C.J.S. Perpetuities § 27; Annot., 110 A.L.R. 1450; 1 Scott on Trusts, Vol. 1, § 62.11; Restatement of the Law (2d) Trusts § 62, p. 169; Simes and Smith, The Law of Future Interests § 1391 (2d ed.).
Gray had this to say on the question:
A reasonable period for a restraint on alienation, or a postponement of possession, of an absolute equitable interest seems to be the life of the equitable owner. It is doubtful whether a restraint or a postponement of possession would be sustained, after the death of the equitable owner, for a period of twenty-one years, or during the life of some other person... . If the postponement of possession is good only within the term of one particular life, the analogy of the rule on this point to the Rule against Perpetuities is imperfect.
The rule in question is sometimes called a rule against indestructible trusts. This name is not inappropriate as applied to the principle discussed in this chapter that the equitable owner of property, in which no one else has any interests, has the right to terminate the trust, subject in some jurisdictions to a limited delay. But there is no general rule that a trust cannot be created which will remain indestructible for longer than the Rule against Perpetuities. (Gray, The Rule against Perpetuities § 121.7, Note 4 (4th ed. 1942).
In re Estate of Kelley, 193 So.2d 575 (Miss. 1967), contains an interesting discussion on restraints on alienation. The Court held that the predecessor to Mississippi Code Annotated section 89-1-15 (1972) did not abrogate the common-law rule that disabling restraints upon the alienation of a legal life estate or fee are void. The Court noted that the rule formerly adopted by the Court is contrary to the overwhelming weight of the authorities, but that the decisions holding valid restraints on alienation during the lifetime of a life tenant have become embedded in the property law of the State. Therefore, adhering to precedent, the Court held that a restraint on alienation may not exceed the life of a life tenant or succession of life tenants living at the time the estate is created. In that case, the testator gave a life estate in certain real property to his daughter, with a proviso that the home property of the testator could not be alienated until the grandchildren of the testator reached forty-five *1381 years of age. The Court affirmed the lower court's ruling that this provision was void. However, applying the equitable approximation doctrine so as to give effect to the intention of the testator to the extent the law permitted, the Court upheld the restraint upon the sale of the property in question during the lifetime of the daughter, but would not permit the restraint to be extended beyond her lifetime, thus preserving the integrity and usefulness of the rule against restraints on alienation.
The reasoning applied in the Kelley case is equally applicable to a provision postponing the direct enjoyment of property for too long a time, and is in line with the authorities quoted above concerning the permissible duration of a trust. Should the seven children of Carl C. May die before the year 2022, the provision in the will postponing distribution of the trust corpus beyond their lives would exceed that period permitted by the common-law rule prohibiting indestructible trusts or unreasonable restraints on alienation. But if one or more of the children should survive beyond 2021, then the provision postponing possession is valid.
For the same reasons expressed in Kelley, we apply the doctrine of equitable approximation so as to give effect to the intention of the testator, as nearly as possible. The testator's clear intention was to postpone the transfer of the trust corpus to his children until the year 2022. We hold, therefore, that the testator's provision that the property shall not be delivered to his children until the year 2022 is adjudged to be invalid to the extent, and only to the extent, that such restraint may exceed the lifetime of the last surviving child. To this extent, the chancellor's decree is modified.
In summary, we affirm the chancellor's finding that the equitable interests vested in the seven named children of the testator on the testator's death. Therefore, the chancellor correctly held that the Rule against Perpetuities did not apply, that ruling being applicable only to contingent future interests. Furthermore, although the will did not specifically provide that the duration of the trust was limited to the life of the last surviving child, the will creating the trust showed a clear intent of the testator to so limit the duration of the trust, or until the year 2022, whichever would be shorter. To that extent the chancellor's decree is modified.
AFFIRMED AS MODIFIED.
PATTERSON, C.J., and BROOM, LEE and BOWLING, JJ., concur.
SUGG, J., and SMITH and ROBERTSON, P. JJ., dissent.
HAWKINS, J., took no part.
SUGG, Justice, dissenting:
I dissent from the majority opinion, but before stating the reasons for my dissent, I will supplement the facts stated in the majority opinion so the circumstances surrounding the maker at the time he made his will may be considered. Carl C. May was a resident of Coahoma County, Mississippi when he executed his will on September 1, 1972. He died on March 23, 1973 while a resident of West Helena, Arkansas and his will was duly admitted to probate in Phillips County, Arkansas. According to the petition to probate the will, testator owned real estate valued at $2,403,400 and personal property valued at $305,500 at the time of his death.
Carl C. May was survived by his widow, Louise J. Wilson May, and seven children  three adults and four minors. Testator's widow renounced the will and was paid the sum to which she was entitled. It was stipulated that testator's widow has no further interest in the administration of the estate.
Apparently testator was married at least three times. I reach this conclusion because he was survived by his widow, Louise J. Wilson May; two of the minor children of testator reside in West Helena, Arkansas with their mother, Eunice May; and two minor children of the testator reside in Phoenix, Arizona with their mother, Mary Bettencourt. Carl C. May was survived by the following children and grandchildren:
1. Anthony Ray May, an adult who resides at West Helena, Arkansas with *1382 his wife and two children who are six years of age.
2. Rickey L. May, an adult resident of West Helena, Arkansas. He has one four year old child who resides with the mother of the child, Deborah P. May at another address.
3. Tony C. May, an adult resident of West Helena, Arkansas. He has two children seven and four years of age who live with their mother, Sandra L. May at another address.
4. Pamela Joy May, a minor twenty years of age who resides with her mother, Eunice May in West Helena, Arkansas.
5. Shelia Ann May, a minor fifteen years of age who resides with her mother, Eunice May in West Helena, Arkansas.
6. Dianne May, a minor whose age is not stated and who resides with her mother, Mary Bettencourt in Phoenix, Arizona.
7. Carl May, Jr., a minor whose age is not stated who resides with his mother, Mary Bettencourt in Phoenix, Arizona.
An authenticated copy of May's will was admitted to probate in Coahoma County, Mississippi and a petition for construction of the will was filed August 22, 1978. The ages of the children and grandchildren of testator stated above are their ages on that date, but the ages of all of his children is not shown in the record. When Carl C. May executed his will on September 1, 1972 he had seven living children and at least one living grandchild. The birthdates of the six year old children of Anthony Ray May are not shown in the record so I am unable to ascertain whether these grandchildren of the testator were born before or after the execution of the will. The four year old child of Rickey L. May and the four year old child of Tony C. May, grandchildren of the testator, were born after the execution of the will. The seven year old child of Tony C. May, a grandchild of the testator, was born before the execution of the will.
Before examining the provisions of the will under consideration, certain rules of construction should be stated. The sole object of construing a will is to arrive at the intention of the maker. This was stated in Henry v. Henderson, 103 Miss. 48, 60 So. 33 (1912) in the following language:
The sole object of construing a will is to arrive at the intention of the maker; and this intention must be gathered from the whole instrument, construed in the light of the circumstances surrounding the maker at the time of the execution thereof. While it may be true that `no two wills probably ever were written in precisely the same language throughout, and probably no two testators ever did die under precisely the same circumstances in relation to their estate, family, and friends,' so that technical rules of law and adjudicated cases are not of as great assistance in the construction of a will as they are in the construction of some instruments of a different character, still they are not to be disregarded altogether, but should be followed, unless to do so would do violence to the clear intent of the testator. (103 Miss. at 61, 62, 60 So. at 37)
With reference to the rule against perpetuities, the Henry Court stated:
`The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not like a rule of construction, a test, more or less artificial to determine intention. Its object is to defeat, intention; therefore, every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied.' Gray on the Rule against Perpetuities (2 Ed.), sec. 629. (103 Miss. at 69, 60 So. at 40)
Moreover, it is well established that where a testator makes a good, absolute gift and the testator, in an additional clause modifies the gift, and by such modification makes it, in part, too remote, the modification is rejected in toto and the original gift stands. Smith v. Muse, 134 Miss. 827, 98 So. 436 (1924); Carter v. Berry, 243 Miss. 321, *1383 136 So.2d 871, suggestion of error overruled 243 Miss. 356, 140 So.2d 843 (1962). In Smith, this Court stated:
Gray, in his work, The Rule against Perpetuities (2d Ed. section 423), states the rule thus:
`Although the construction to be put upon an instrument is not affected by the existence of the rule against perpetuities, yet when there is a good absolute gift, and the settlor or testator goes on, in an additional clause, to modify the gift, and, by modifying it, makes it, in part, too remote, the modification is rejected in toto, and the original gift stands.' (134 Miss. at 836, 98 So. at 437)
In Carter, the Court stated:
Another established analogy is this: A testator devises his estate to his grandchildren in equal shares, and then directs that of the share of each granddaughter the income shall be paid to her for life and the principal conveyed to her children in fee. The gift to the children of the granddaughter is bad for remoteness, the modification of the devise is rejected, and each granddaughter takes a fee. Whitehead v. Bennett, 22 L.J.Ch. 1020; Gray, Secs. 880, 423 et seq., 431. In short, when there is a good absolute gift, and `the settlor or testator goes on, in an additional clause, to modify the gift, and, by modifying it, makes it in part too remote, the modification is rejected in toto and the original gift stands.' Ibid., Sec. 423; Sears v. Putnam, 102 Mass. 5 (1869), Comment in Gray, Sec. 429. (243 Miss. at 373, 374; 140 So.2d at 854).

CONSTRUCTION OF THE WILL AND APPLICATION OF THE RULE AGAINST 
PERPETUITIES
With these rules in mind it is necessary to ascertain, if possible, the dominant purpose of the testator, and then construe the language of the will in the light of this purpose and these authorities.
Item III of the will provides:
I hereby give, devise and bequeath unto my children (the children are here named) to share equally, per stirpes, all of my property ... to be held in trust in accordance with Item # IV until the year 2022, for their use and benefit to sell and dispose of and do any and all other acts that they may desire as long as they shall live.
It is evident from the above language that the dominant purpose of the testator was to leave his property to his children subject to a trust with the children having the authority to sell and dispose of the property during their lives. The testator devised fee simple title of all his land to his children subject to the trust created in Item IV. Item III is a valid devise and testator could, under the law, devise fee simple title subject to a trust.
However, the trust created in Item IV is repugnant to the fee simple devise in Item III and violates the rule against perpetuities because it modified the gift of Item III and made it in part too remote. Therefore, under the rule stated in Smith v. Muse and Carter v. Berry, the modification must be rejected in toto and the original gift in Item III allowed to stand.
I have stated Item IV is repugnant to the absolute gift contained in Item III and an examination of the provisions of Item IV demonstrates this. Item IV(a) directs the trustee to take possession of testator's property and to:
[H]old, manage, invest and reinvest and keep the same invested, and collect and receive interest and income thereof for and during the period of trust hereby created, and after paying all costs and expenses incident to the execution of this trust, shall until the year 2022 use the income from my estate, for the support, maintenance, care and education of my said children, per stirpes, paying such amounts as may be necessary for said purposes, in the discretion of said trustee either direct to my children, per stripes, as may be deemed best by such trustee.
Item IV(b) provides:
After the year 2021 my executor and trustee shall transfer, convey and pay over the corpus of said trust with all gain, increases and accumulations, if any, to my said children per stirpes, absolute and forever.
*1384 Item IV(c) gives the trustee the power to sell any property of the trust estate, to acquire additional property, to encumber the property and make any contract with reference to the property of the trust estate "deemed by him necessary and for the best interest" of the trust estate.
There is an irreconcilable conflict between the provisions of Item III and Item IV of the will. In Item III testator leaves his property to his children in fee simple subject to a trust; however, the trust created in Item IV takes away the fee simple grant to the children. It is evident that Item IV modifies the gift to the children contained in Item III for the following reasons.
First, Item III gives the children the power to sell the property, but Item IV(c) gives the trustee the power to sell the same property thus canceling the power of sale in Item III.
Second, Item III gives the children the authority "to any and all acts they may desire" to the property left to them, but Item IV directs the trustee to take possession and hold and manage the same property.
Third, Item IV(b) directs the trustee, after the year 2021 to convey the trust property together with all gain, increases and accumulations to testator's children. It naturally follows that the trustee can only convey the trust property to the children who are living after the year 2021. The trustee could not convey the trust property to any child who died before the end of the year 2021 because a deed to a deceased person is void. Life Ins. Co. of Virginia v. Page, 178 Miss. 287, 172 So. 873 (1937); Morgan v. Collins School, 157 Miss. 295, 127 So. 565 (1930); Morgan v. Hazlehurst Lodge, 53 Miss. 665 (1876). Neither could the trustee convey any part of the trust estate to the heirs or devisees of any child of testator who died before the end of the year 2021 because Item IV(b) directs the trustee to convey the corpus of the trust estate, including "all gain, increases and accumulations, if any, to my said children, per stirpes ..." Item IV(b) thus takes away from the children the absolute devise contained in Item III.
Fourth, Item IV(a) directs the trustee to pay to his children, per stirpes, such amounts as may be deemed best by the trustee. Item IV(a) does not permit the trustee to pay any income from the trust to any person other than a child of the testator. This cuts down the gift to the children in Item III because the trustee is not authorized to pay to the heirs or devisees of any child who died before the end of the year 2021. This is inconsistent with the absolute gift to the children contained in Item III.
For the foregoing reasons Item IV conflicts with Item III and modifies it to the extent that the title vested in the children by Item III is divested from them by Item IV. Therefore, title is not vested in the children because of Item IV. In my opinion this is a proper construction of the conflicting provisions of the will. Under Smith v. Muse, every provision in a will must be construed as if the rule against perpetuities did not exist, and then the rule must be remorselessly applied. The rule is defined in Magee v. Magee, 236 Miss. 572, 111 So.2d 394 (1959) as follows:
The rule against perpetuities prohibits the creation of future interests or estates which by possibility may not become vested within a life or lives in being at the time of the testator's death or the effective date of the instrument creating the future interest, and twenty-one years thereafter, together with a period of gestation when the inclusion of the latter is necessary to cover cases of posthumous birth. 41 Am.Jur., 50, Perpetuities and Restraints on Alienation, par. 3A.
No limitation of a present life estate, or a present term of not more than twenty-one years, can be bad for remoteness. Gray, The Rule Against Perpetuities, Fourth Edition, p. 228, sec. 225. (236 Miss. at 591-592, 111 So.2d 394).
Item III vested title in the children but Item IV modified Item III by divesting title from the children. The modification makes the absolute gift in Item III, in part, too remote because there is a possibility that *1385 some, or all, of the children will die before the year 2022 and title could not vest under Item IV(b) until the year 2022. When the rule against perpetuities is applied to Item IV, it must be rejected in toto because of the possibility that title will not vest within a life or lives in being and twenty-one years thereafter.
Application of the rule against perpetuities would not be contra to Phelps v. Shropshire, 254 Miss. 777, 183 So.2d 158 (1966). In Phelps, testatrix left all her property in trust for the use and benefit of her nieces and nephews on her mother's side, the Episcopal Church, and the Masonic Fraternity. The trust was to last as long "as the institutions of the Episcopal Church and that of the Free Masons or their successors." The Church and Free Masons declined the legacy to them and the Court held that the gift over to the family of the testatrix was valid since it occurred within the period of perpetuity. Against this factual background the Court held that the trust was not invalid either in whole or in part merely because the duration of the trust may exceed the period of the rule against perpetuities, provided that the interest of all the beneficiaries must vest within the period. The Court then went on to state:
In upholding such trusts, the courts, have frequently pointed out that there was no undue fettering of property for too long a time, because the beneficiaries could at any time terminate the trust. (183 So.2d at 163)
In Phelps the Court said the beneficiaries evidenced a desire to terminate the trust. For this reason, the Court held that the gift over to the family did not violate the rule against perpetuities. Phelps is distinguished from May's will because May's beneficiaries are without power to terminate the trust. Therefore, Phelps does not apply to the facts in this case.

THE RULE OF EQUITABLE APPROXIMATION
The majority opinion holds that the rule of equitable approximation should be applied and thereby limit the life of the trust to the life of the last surviving child, or until the year 2022, whichever would be shorter. If the Court applies the rule of equitable approximation, the life of the last surviving child should not determine the duration of the trust. Instead, a true application of the rule requires that the trust be terminated 21 years after the death of the testator. The testator specifically provided in Item IV that the trust would extend until the year 2022. There is no other date fixed in the will for the termination of the trust and no life in being is stated in the will which can be used as a measure of the duration of the trust. Therefore, if the rule of equitable approximation is applied, the trust must terminate 21 years after the effective date of the trust, which was March 23, 1973, the date of death of the testator.
The rule of equitable approximation should not be applied because it would defeat rather than carry out the purpose of the testator. Carl C. May intended for his children to have his property. Application of the rule as set forth in the majority opinion would divest fee simple title from the children, convert the fee simple title to a life estate coupled with a possibility. Under the majority opinion, the only possible way testator's children can be vested with title to the trust property is to survive until the year 2022. At that time, under Item IV(b), the trustee is directed to convey the trust property to any child who was then alive. The trustee could not convey any of the trust property to a deceased child because the grantee in a deed must be in esse. The trustee is not authorized to convey the trust property to any other person, so if one child survived until the year 2022, he would take the entire trust estate. This is wholly inconsistent with testator's intent to leave his property to his children as expressed in Item III of his will.

CONCLUSION
The majority opinion raises questions that it does not answer. For example, Item IV(a) specifically empowers the trustee to make payments of the income from the trust only to "my said children, per stirpes." Anthony Ray May, Rickey L. May, and Tony *1386 C. May each have children. If Anthony Ray May should die in the year 1981 leaving his wife and two children as his heirs, could the trustee pay from the income of the trust the amount of support that Anthony Ray May would have been entitled to if he had lived? I think not because Item IV(a) authorized payment only to the children of testator.
The majority opinion holds that Item IV is invalid and then limits the life of the trust to the life of the last surviving child or until the year 2022, whichever would be shorter. This is an over simplification of a problem created by the will of Carl C. May. It is not enough to simply say that the interest devised to the children is vested in them as of the date of Carl C. May's death with distribution to be made of income only for almost fifty years and final distribution to be made in the year 2022 or on the death of the last child if such event should occur before the year 2022. Item IV of the will is wholly inconsistent with the expressed intent of the testator to leave his property to his children and makes the absolute gift to his children too remote under the rule against perpetuities.
I recognize that a testator may leave his property vested in his devisees and legatees subject to a valid trust; however, in this case testator attempted to reach too far from his grave to control the ultimate disposition of his property. We can more nearly carry out the expressed intent of the testator to leave his property to his children by striking Item IV as being inconsistent with a grant of fee simple title in Item III. Otherwise, we will defeat the intent of the testator.
SMITH and ROBERTSON, P. JJ., join in this opinion.
NOTES
[1] In Pace v. Culpepper, 347 So.2d 1313 (Miss. 1977), the doctrine of equitable approximation was defined as a rule of judicial construction, designed to aid the Court to ascertain and carry out, as nearly as may be, the intent of a donor or testator. The opinion cited National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933), a case in which this Court distinguished the doctrine of equitable approximation from the ecclesiastical rule of cy pres.
[2] The opinion cited no authority for this statement.
[3] Estates in fee tail are prohibited; and every estate which, but for this statute, would be an estate in fee tail, shall be an estate in fee simple; but any person may make a conveyance or a devise of lands to a succession of donees then living, and upon the death of the last of said successors to any person or any heir.